1
2
3
4
5
6
7

**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Tuvia Korobkin (SBN 268066)
tkorobkin@haineslawgroup.com
Fletcher W. Schmidt (SBN 286462)
fschmidt@haineslawgroup.com
2274 E. Maple Ave.
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2228

Attorneys for Plaintiff

8
9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| YADIR A. ONTIVEROS, as an individual, and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>SAFELITE FULFILLMENT, INC., a Delaware Corporation; SAFELITE GROUP, INC., a Delaware Corporation; SAFELITE GLASS CORP., a Delaware Corporation; and DOES 1 through 10,<br><br>            Defendants. | Case No.: 2:15-cv-07118-DMG-RAO<br><br>**PLAINTIFF YADIR ONTIVEROS' *EX PARTE* APPLICATION FOR A COURT ORDER: (1) ENJOINING SAFELITE FROM ENTERING INTO INDIVIDUAL SETTLEMENT AGREEMENTS WITH PUTATIVE CLASS MEMBERS AS PART OF A *CHINDARAH* CAMPAIGN; (2) INVALIDATING THOSE SETTLEMENT AGREEMENTS ALREADY ENTERED INTO WITH PUTATIVE CLASS MEMBERS AS PART OF THE *CHINDARAH* CAMPAIGN; (3) REQUIRING A CURATIVE LETTER BE SENT TO THE PUTATIVE CLASS; AND (4) PERMITTING PLAINTIFF TO FILE A MOTION FOR SANCTIONS AGAINST SAFELITE AND ITS COUNSEL FOR THEIR IMPROPER CONDUCT IN CONNECTION WITH THE *CHINDARAH* CAMPAIGN**<br><br>[Filed concurrently with [Proposed] Order and Declaration of Paul K. Haines]<br><br>Judge:        Hon. Dolly M. Gee<br>Courtroom.:  8C |

---

PLAINTIFF YADIR ONTIVEROS' *EX PARTE* APPLICATION

**TO THE COURT, DEFENDANT AND ITS COUNSEL OF RECORD:**

Plaintiff Yadir Ontiveros ("Plaintiff") has filed this *ex parte* application because Defendant Safelite Fulfillment, Inc. ("Safelite") and its counsel are currently engaged in highly inappropriate conduct which requires immediate injunctive relief.  Specifically, Safelite is currently in the process of extending individual settlement offers to all putative class members, which Safelite contends is lawful per *Chindarah v. Pick Up Stix Inc.* 171 Cal.App.4th 796 (2009).   Based on the information provided to Plaintiff by Safelite's counsel, it appears that Safelite began extending individual settlement offers to putative class members on or about August 21, 2017, one month **after** Plaintiff filed his Motion for Class Certification, and only one month **before** the hearing date on the Motion. While Plaintiff does not dispute that a defendant usually has a right to enter into individual settlements with putative class members per *Chindarah*, Safelite's actions are highly improper and immediate injunctive relief is needed for the following reasons:

First, the Court has already summarily adjudicated liability in Plaintiff's favor on several claims, given that Safelite requested that the Court allow summary judgment to proceed before permitting Plaintiff to file for class certification.   *See* Dkt. No. 65 (Court's MSJ Order, finding Safelite's PPP Incentive Pay Plan and pay practices to be unlawful in several respects, and adjudicating liability in Plaintiff's favor on several claims). Yet Safelite falsely refers to Plaintiff's claims as "disputed" in the *Chindarah* materials provided to putative class members.  Moreover, Safelite fails to attach a copy of the MSJ Order, or otherwise mention the Court's MSJ Order, anywhere in the *Chindarah* materials.  Nor does Safelite include a copy of Plaintiff's Complaint with the *Chindarah* materials.   These omissions are of great significance as discussed in the accompanying Points and Authorities.

Second, Plaintiff filed for class certification on July 21, 2017, and his Motion for Class Certification seeks to certify seven classes. *See* Dkt. No. 72. Concurrent with filing for class certification, Plaintiff also filed the Expert Report of J. Michael DuMond, Ph.D., which sets forth the methodology for calculating classwide damages for each of the seven proposed classes.  *See* Dkt. No. 72-2.

Third, Safelite filed its Opposition to Plaintiff's Motion for Class Certification, on August 21, 2017.  *See* Dkt. No. 78.  **Safelite's Opposition did not oppose certification of <u>six</u> of the <u>seven</u> classes sought to be certified by Plaintiff.** Nor did Safelite oppose Plaintiff's trial plan for adjudicating damages with respect to the six classes that it did not oppose.

Fourth, because Safelite has conceded class certification is appropriate for six classes, and because the Court has already adjudicated liability in Plaintiff's favor on several claims, Safelite cannot credibly dispute its classwide liability.  In other words, there is no bona fide dispute that wages are owed to putative class members, and Plaintiff's expert, Dr. DuMond, has set forth the methodology for summarily adjudicating the amount of damages owed for the members of each of the six classes that are unopposed by Safelite.  Because Safelite has not challenged Plaintiff's methodology for calculating damage for these six unopposed classes, there is no legitimate argument that there is any "bona fide dispute" as to the amount of damages owed to these class members for these claims, as calculated per the methodologies proposed by Dr. DuMond.[1]

------

[1] By way of example, the Court's MSJ Order held that Safelite's PPP Incentive Plan is a piece-rate pay plan that fails to separately compensate Technicians for rest periods as required by California law. *See* Dkt. No. 65 at 9:1-6.  Class 1a identified in Plaintiff's Motion for Class Certification seeks to recover rest period premium wages on behalf of Technicians paid on Safelite's PPP Incentive Plan.  *See* Dkt. No. 72. Because Safelite has failed to oppose certification of Class 1a, and because the Court has already found that the PPP Incentive Plan is a piece-rate pay plan that fails to compensate separately for rest period, there is no dispute that unpaid rest period premium wages are owed to the members of Class 1a.  The Expert Report of Dr. J. Michael DuMond, Ph.D., filed concurrently with Plaintiff's Motion for Class Certification, sets forth the methodology for calculating the rest period premium wages owed to the members of Class 1a, which as Dr. DuMond explains can be done through a motion for summary adjudication.  *See* Dkt. No. 72-2 at pp. 5-7 (setting forth methodology for calculating rest period premium wages owed to members of Class 1a through their timekeeping and payroll records). Safelite's Opposition to Plaintiff's Motion for Class Certification does not challenge Plaintiff's trial plan for calculating unpaid wages owed to the members of Class 1a.

Fifth, because Safelite understands that the damages owed to the members of the six unopposed classes can be summarily adjudicated, *on the same date* that it filed its Opposition to Plaintiff's Motion for Class Certification, it began extending individual *Chindarah* settlements to all putative class members.  Again, Safelite did not begin extending these individual settlement offers until one month **after** Plaintiff had filed his Motion for Class Certification and only one month **before** the Motion will be heard.

Sixth, not only are the individual *Chindarah* settlement offers highly improper at this stage in the proceedings for the reasons discussed above, but the information provided by Safelite to putative class members is untruthful and misleading, as the process by which the *Chindarah* campaign is being carried out is highly coercive and does not comport with what is required under the law.  Moreover, the individual settlement offers purport to pay putative class members only $250 per year that they have been with the company, far less than they are indisputably owed, in exchange for a full release of any and all claims, known or unknown, that are "related" to the claims in this action, including claims that have already been adjudicated in Plaintiff's favor and claims under the Private Attorney's General Act, falsely claiming that liability is "disputed" and "uncertain".  As held in *Aguilar v. Zep Inc.*, "Defenses presented which, under all the circumstances, **are unsupported by any evidence**, **are unreasonable**, **or are presented in bad faith**, will preclude a finding of a "good faith dispute [necessary for a valid release under California Labor Code §206.5]." *Aguilar v. Zep Inc.*, Case No. 13–cv–00563–WHO, 2014 WL 1900460 (N.D. Cal. 2014) (emphasis added); *see also Slavkov v. Fast Water Heater Partners I, LP,* Case No. 14-cv-04324-JST, 2015 WL 6674575 (N.D. Cal., Nov. 2, 2015) (holding that release purporting to release PAGA claims without Court approval was inherently "misleading" in nature). The extensive improprieties with Safelite's *Chindarah* campaign are discussed in detail in the accompanying Points and Authorities.

For the reasons discussed herein and in the Points and Authorities, Plaintiff seeks an Order: (1) enjoining Safelite from entering into any individual settlement agreements with putative class members as part of a *Chindarah* campaign; (2) invalidating those

settlement agreements already entered into with putative class members as part of the *Chindarah* campaign; (3) requiring a curative letter be sent to the putative class; and (4) permitting Plaintiff to file a Motion for Sanctions against Safelite and its counsel for their improper conduct in connection with the *Chindarah* campaign. Alternatively, if the Court is not inclined to grant any of the requested relief on an *ex parte* basis, Plaintiff respectfully requests that he be permitted to bring a motion for the relief sought herein.

This *ex parte* application is based upon the accompanying Points and Authorities and the Declaration of Paul K. Haines and supporting exhibits. Plaintiff makes this Application after providing notice to counsel for Safelite on August 22, 2017 pursuant to Central District Local Rule 7-19, and this Initial Standing Order, that Plaintiff would file this application on August 23, 2017, that Safelite's opposition must be filed no later than 24 hours (or one court day) following electronic service of the *ex parte* application, and that if Safelite does not intend to oppose the *ex parte* application, that it must inform the courtroom deputy clerk at (213) 894-5452. *See* Declaration of Paul K. Haines ("Haines Decl."), ¶¶ 4-6, Exhs. C-D. Plaintiff's counsel also attempted to reach counsel for Safelite, Robert Harris and Daniel Clark, by telephone at approximately 9:35 a.m. on August 23, 2017 to orally discuss the substance of the *ex parte* application, but neither Mr. Harris nor Mr. Clark answered their phones, and therefore, Plaintiff's counsel left a voicemail for both. *Id.*, ¶ 4. Safelite's counsel has represented that Safelite intends to oppose this *ex parte* application. *Id.,* ¶ 5, Exh. D.

Plaintiff served a courtesy copy of this *ex parte* application along with the declaration of Paul K. Haines, and the [proposed] Order by email on August 23, 2017, immediately before filing the same with the Court. *Id.,* ¶ 6. Counsel for Safelite is Robert A. Harris, Esq. (raharris@vorys.com) and Daniel J. Clark, Esq. (djclark@vorys.com) of Vorys, Sater, Seymour and Pease LLP, 52 East Gay Street, Columbus, Ohio 43215; Telephone (614) 464-6400; and Brent M. Giddens, Esq. (bgiddens@cdflaborlaw.com) and Daphne Bishop (dbishop@cdflaborlaw.com) of

Carothers, Disante & Freudenberger LLP, 707 Wilshire Blvd., Suite 5150, Los Angeles, California 90017; Telephone: (213) 612-6300.

Dated:  August 23, 2017                    HAINES LAW GROUP, APC

                                           ____/s/ Paul K. Haines _____
                                           Paul K. Haines, Esq.
                                           Attorneys for Plaintiff

## POINTS AND AUTHORITIES

## I.   FACTUAL SUMMARY

Plaintiff Yadir Ontiveros brings this *ex parte* application for a Court Order to: (1) enjoin Defendant Safelite Fulfillment Inc. from entering into any further individual settlement agreements pending a ruling on Plaintiff's Motion for Class Certification, which is set for hearing on September 29, 2017; (2) invalidating those settlement agreements already entered into with putative class members as part of the *Chindarah v. Pick Up Stix* campaign; (3) require a curative letter to be sent to the putative class; and (4) permitting Plaintiff to file a Motion for Sanctions against Safelite and its counsel for their improper conduct in connection with the *Chindarah* campaign.  Alternatively, if the Court is not inclined to grant any of the requested relief on an *ex parte* basis, Plaintiff respectfully requests that he be permitted to bring a motion for the relief sought herein.

*Ex parte* relief is required because immediate injunctive relief is required to prevent this *Chindarah* campaign from continuing, as it only began two days ago. Critically, Safelite did not commence the *Chindarah* campaign until <u>after</u> the Court had already concluded as a matter of law that Safelite's PPP Incentive Pay Plan was unlawful, and <u>after</u> Plaintiff had already filed his Motion for Class Certification.  In short, Safelite has waited too long to commence the *Chindarah* campaign, as to find otherwise would be to allow the Court to be used by as a pawn by class action defendants.  Specifically, if Safelite's conduct were ratified by this Court, it would fundamentally alter how class actions are litigated by every single defendant going forward.  There would no longer be any incentive to have class certification precede summary judgment.  Rather, every single defendant would opt-to have summary judgment take place before class certification. If summary judgment is granted in favor of the defendant, the case is over.  However, if summary judgment is granted in plaintiff's favor, then defendant still has the opportunity "wait and see" what the motion for class certification looks like, and if it appears that class certification will be granted, rush to settle the claims of individual class members before the Court can enter an order

granting class certification for a fraction of what would ultimately be awarded through a classwide judgment.  This "no-lose" proposition for a class action defendant cannot be permitted, as it constitutes blatant gamesmanship upon the judicial system.

Nor is class certification in this case a mere theoretical possibility – Safelite's Opposition to Class Certification only opposes certification of <u>one</u> of the <u>seven</u> classes that Plaintiff seeks to certify (i.e, Class 1b: PPP Incentive Plan Class – Unpaid Non-Productive Time). *See* Dkt. No. 78 (Opposition to Class Certification). As to the remaining six classes, Safelite makes **no substantive arguments whatsoever** in Opposition to Plaintiff's Motion for Class Certification; in other words, Safelite concedes that certification is appropriate as to the other six proposed classes (the only caveat to the following statement is that Safelite contends that the beginning date of the class periods for Classes 1a, 3a and 3b should be June 4, 2013 instead of September 9, 2011). *See id.* at pp. 3-5.

Having conceded that class certification is proper to six of the seven classes, with only the passage of time standing between Plaintiff and a class certification order, Safelite has begun racing to settle  as many of the putative class members' claims as possible before the Court can enter an order granting class certification.  Plaintiff's counsel learned that Safelite was engaging in a *Chindarah* campaign on August 21, 2017 (two days prior to filing this *ex parte* application), after being informed that a number of putative class members were receiving a check denoted as a "settlement". *See* Haines Decl., ¶ 2.   When Plaintiff's counsel inquired of Safelite's counsel what this payment represented, Safelite's counsel informed Plaintiff that Safelite was engaged in a *Chindarah* campaign.  *See* Haines Decl., ¶ 2, Exh. A.   After being provided this information, Plaintiff's counsel immediately demanded that Safelite provide Plaintiff with: (1) a template of the materials provided to the putative class settlement members; (2) the date that the *Chindarah* campaign began; (3) the number of putative class members who were offered settlement agreements through the *Chindarah* campaign; (4) how many putative class members accepted the *Chindarah* settlement offers; and (5) how the amounts offered in the *Chindarah* settlement were calculated.  *Id.,* ¶ 2, Exh. A.

On August 22, 2017, Safelite's counsel provided Plaintiff with a copy of the materials provided to putative class members through the *Chindarah* campaign, and informed Plaintiff's counsel that individual settlements were being extended to all putative class members. *See* Haines Decl., ¶ 3, Exh. B (*Chindarah* materials purportedly provided to putative class members).  The *Chindarah* materials and process by which these settlement offers are being extended are problematic in so many respects, that the following section of this *ex parte* application is devoted solely to these issues.

## II.   THE *CHINDARAH* MATERIALS PROVIDED TO CLASS MEMBERS

The *Chindarah* materials provided to putative class members include: (1) a settlement check made out to the putative class member in the amount of $250 for each year that the putative class member had worked for Safelite during the putative class period; (2)  a letter from Steve Miggo, SVP Operations & Supply Chain; (3) a "Fact Sheet," which omits several material facts and makes several false representations; and (4) a Settlement Agreement and Release, which is deemed signed by the putative class member immediately upon the cashing of the enclosed settlement check. Haines Decl., ¶ 3, Exh. B. These materials are woefully inadequate for several overarching reasons discussed below.  However, even if the *Chindarah* materials provided to putative class members were not riddled with the numerous problems discussed herein, the relief sought through this *ex parte* application would still be appropriate for all of the reasons discussed above.   However, the following issues provide even further support for granting the relief sought through this *ex parte* application.

### A.   The *Chindarah* Materials Make Several Materially False and Misleading Statements and Omissions, Including Failing to Attach a Copy of the Complaint or Any Reference to the Court's MSJ Order.

There are several materially false and misleading statements and omissions made in the *Chindarah* materials.  Most glaringly, **there is no mention whatsoever of the Court's MSJ Order**, in which it adjudicated liability in Plaintiff's favor on several of the claims at issue in the lawsuit.  Nor do the *Chindarah* materials inform putative class members that Plaintiff had already filed for class certification, and that Safelite did not

oppose certification of six of the seven classes sought to be certified by Plaintiff. These material omissions paint an entirely different procedural posture, and strength of Plaintiff's claims from that which is portrayed by Safelite, as putative class members are not informed that the Court has found in Plaintiff's favor on several of the claims **as a matter of law**, and that they would become members of a certified class action given that Safelite was not opposing class certification of six different classes.

Rather than informing putative class members of these facts, Safelite erroneously informs the putative class members that, "Safelite is doing this to resolve **disputed claims** directly with Employees…**Safelite disputes that it has any liability for the claims in the lawsuits**…" *See* Haines Decl., ¶ 3, Exh. B (Fact Sheet) (emphasis added). Safelite further informs putative class members that "whether you will ultimately receive a payment from the Lawsuits is uncertain – you could receive less than the settlement amount…or nothing. The only way to guarantee yourself a payment now is by accepting the Settlement Payment." **These are materially false statements as the Court has already concluded that Safelite has liability for the claims in the lawsuit as a matter of law in its MSJ Order.** *See* Dkt. No. 65 (MSJ Order).

Because Safelite has not disputed certification for six of the seven classes that Plaintiff seeks to certify, nor has Safelite disputed Plaintiff's methodology for summarily adjudicating damages, Safelite cannot credibly assert that any "bona fide dispute" exists as to the amount of these wages and penalties owed. Safelite's *Chindarah* materials materially misleads the putative class members into believing that all claims are "disputed" when there is no legitimate dispute. Just because Safelite is unhappy with the Court's MSJ Order does not mean that the claims are disputed, and to suggest otherwise is a flippant disregard and disrespect of this Court's Orders. Per Rule 56 of the Federal Rules of Civil Procedure, in granting Plaintiff's Motion for Partial Summary Judgment, the Court was required to find that "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Safelite's disregard of this Court's MSJ Order should not be condoned.

Additionally, no copy of the operative complaint is included in the *Chindara* materials. Instead, the "Fact Sheet" tells putative class members that the complaint "can be accessed at https://pacer.login.uscourts.gov/csologin/login.jsf," and that the Complaint in a related class action filed by Plaintiff's counsel in Los Angeles Superior Court, in the matter entitled *Curiel v. Safelite Fulfillment, Inc.* "can be accessed at http://wwww.occourts.org." Alternatively, Safelite informs putative class members that a copy of the complaints can be obtained from Plaintiff's counsel or by contacting Safelite's Human Resources Department.

To access the Complaint from PACER requires putative class members to create an account and pay money to download the document. Even more problematic, Safelite tells putative class members that it can obtain a copy of the *Curiel* complaint from the Orange County Superior Court's website, but *Curiel* is filed in Los Angeles Superior Court, not Orange County. Of course, even if a putative class member were able to figure out that Safelite had sent him to the incorrect court's website, the putative class member would still be required to create an account and pay money to access a copy of the *Curiel* Complaint. Short of contacting Plaintiff's counsel, the only other means by which a putative class member is informed that he can obtain a copy of the complaints is by requesting the documents from Safelite's Human Resources department, which of course, is inherently coercive and intimidating.

In *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, at *4, 6 (N.D. Cal. July 8, 2010), Judge Alsup invalidated releases obtained from putative class members, where the letter sent to putative class members did not contain a copy of the complaint, describe the claims, current status of the case, nor provide "the important statement that the court of appeals had already vetted and approved the theory of the case, an important factor in examining the strength of a claim," which is very similar to the facts currently before this Court. *See also e.g., Cheverez v. Plains all American Pipeline, LP*, No. CV15-4113 PSG (JEMx), 2016 WL 861107, at *4 (C.D. Cal. March 3, 2016) ("Courts routinely hold that releases are

misleading where they do not permit a putative class member to fully evaluate his likelihood of recovering through the class action.") (citations omitted).

**B.    The *Chindarah* Settlement Checks Offer Putative Class Members Less Than What the Court's MSJ Order has Already Determined They are Undisputedly Owed as a Matter of Law.**

Having lost at summary judgment, and failing to oppose class certification for six of the seven classes sought to be certified by Plaintiff, Safelite is now offering putative class members less money than what it knows they are entitled to **as a matter of law**. In fact, several categories of damages owed to putative class members are undisputed, such as the unpaid wages owed to putative class members for rest period premium wages. As discussed in footnote 1, *supra,* the Court's MSJ Order held that Safelite's PPP Incentive Plan is a piece-rate compensation system that fails to separately compensate Technicians for rest periods as required by California law. *See* Dkt. No. 65 at 9:1-6.   Class 1a identified in Plaintiff's Motion for Class Certification seeks to recover rest period premium wages on behalf of Technicians paid on Safelite's PPP Incentive Plan.  *See* Dkt. No. 72. Because Safelite has failed to oppose certification of Class 1a, and because the Court has already found that the PPP Incentive Plan is a piece-rate pay plan that fails to separately compensate for rest periods, there is no dispute that unpaid rest period premium wages are owed to the members of Class 1a. The Expert Report of Dr. J. Michael DuMond, Ph.D., filed concurrently with Plaintiff's Motion for Class Certification, sets forth the methodology for calculating the rest period premium wages owed to the members of Class 1a, which as Dr. DuMond explains can be done through a motion for summary adjudication.  *See* Dkt. No. 72-2 at pp. 5-7 (setting forth methodology for calculating rest period premium wages owed to members of Class 1a through their timekeeping and payroll records).  Safelite's Opposition to Plaintiff's Motion for Class Certification does not challenge Plaintiff's trial plan for calculating unpaid wages owed to the members of Class 1a.

Because the amount of these rest period premium wages cannot credibly be disputed by Safelite, there is no "bona fide" dispute under Labor Code 206.5, which is

required for a valid release of claims. *See* Cal. Lab. Code § 206.5(a) ("An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section **shall be null and void as between the employer and the employee**. Violation of this section by the employer is a misdemeanor.") (emphasis added); *see also Aguilar v. Zep Inc.*, Case No. 13–cv–00563–WHO, 2014 WL 1900460 (N.D. Cal. 2014) ("In determining whether a "bona fide dispute" exists for the purposes of section 206.5, courts have adopted the standard in California Code of Regulations title 8, section 13520, which provides: A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee…Defenses presented which, under all the circumstances, **are unsupported by any evidence**, **are unreasonable**, **or are presented in bad faith**, will preclude a finding of a "good faith dispute."); *FEI Enterprises, Inc. v. Kee Man Yoon*, 194 Cal.App.4th 790, 805-06 (2011) ("The critical question should be the legal tenability of the justification for non-payment that was asserted ... A legal dispute between two parties exists, is **'legitimate,' 'genuine,' 'bona fide,' or in 'good faith'** where the arguments asserted or positions taken have objective legal tenability.").

Here, Safelite's legal positions "are unsupported by any evidence" and 'are unreasonable" given that these claims have already been summarily adjudicated in Plaintiff's favor.  That Safelite is attempting to continue to assert these arguments that have been found to have no merit as a matter of law, demonstrate that they are being made "in bad faith," are "illegitimate."   There is no evidence that the settlement amounts being offered by Safelite are in any way tethered to the undisputed wages owed to putative class members. Because no "bona fide dispute" can exist under the circumstances, the releases must be invalidated as to any person to whom Plaintiff demonstrates is owed greater wages than he was offered through the *Chindarah* settlement as a matter law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.     The Settlement Agreement and Release Purports to Release Claims Without Putative Class Members Even Signing the Agreement, Purports to Release "Unknown" Claims, and Purports to Release Other Claims That Cannot Lawfully be Released.**

Heightening the coercive nature of this *Chindarah* process, the Settlement Agreement and Release provided to putative class members does not require these individuals to actually sign the Settlement Agreement.  *See* Haines Decl., ¶ 3, Exh. B (Settlement Agreement and Release).  In fact, the Settlement Agreement affirmatively does not require putative class members to sign the Release, in stating that, "Employee's Cashing, Depositing or Otherwise Tendering The Settlement Check Reflects Employee's Acceptance Of The Terms Of The Settlement Agreement." *See id.* at p. 2.

It is axiomatic that a Settlement Agreement and Release purporting to give up important rights must be signed by the parties to the agreement.  *See e.g., Gauss v. GAF Corp.,* 103 Cal.App.4th 1110 (2002) (holding that a settlement agreement not signed by one of the parties is not enforceable pursuant to California Code of Civil Procedure section 664.6); *Dent v. Cox Communications Las Vegas, Inc.,* 502 F.3d 1141, 1146 (9th Cir. 2007) ("Typically an employee manifests assent by signing a receipt…which put the employee on notice of the resulting waiver."); *Levy v. Superior Court,* 10 Cal.4th 578, 583 (finding that a party's signature on a settlement agreement is required to be enforceable, "[s]ettlement is such a serious step that it requires the client's knowledge and express consent."); *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 307 (7th Cir. 1986) (Absent an employee's signature on a receipt, "cashing of checks…[usually does] not release [the employee's] full claims.").  Safelite's attempt to side-step this requirement by allowing putative class members to simply cash a check that is provided to them simultaneously with the Settlement Agreement, which many putative class members may reasonably assume to be a paycheck and not a release of "unknown" claims shines further light on Safelite's malfeasance. This is especially true given that outside of the envelope that the settlement check is delivered in states "IMPORTANT: PLEASE OPEN IMMEDIATELY – CHECK ENCLOSED."  *See* Haines Decl., ¶ 3,

Exh. B.   Notably, the outside of the envelope doesn't mention anything about individuals releasing claims or the check being for a purported "settlement."

The Settlement Agreement also attempts to release "any and all clams, causes of action, damages, attorneys' fees, and costs, whether known or unknown…" *See* Haines Decl., ¶ 3, Exh. B at ¶ 5.  Such a release of "unknown claims" is improper under these circumstances. *See e.g., Bond v. Ferguson Enterprises, Inc*., Case No. 1:09-cv-01662 OWW MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) (holding that release is overbroad as it "does not track the extent and breadth of Plaintiffs' allegations in this case and releases unrelated claims of any kind or nature that class members may have against defendants."); *Tijero v. Aaron Brothers, Inc*., Case No. C 10-01089 SBA, 2013 WL 60464, at *9 (N.D. Cal. Jan. 2, 2013) (holding that release for settlement class members, which included all "known or unknown" claims arising out of employee's employment, was overly broad and improper.); *Custom Led, LLC v. eBay, Inc*., Case No. 12-cv-00350-JST, 2013 WL 4552789, at *6-7 (N.D. Cal. Aug. 27, 2013) (Court concludes that the scope of the release is overly broad as "it improperly releases any claim, known or unknown.").

Recognizing that the *Chindarah* process as carried out under the facts of this case is highly improper and likely to be rejected by the Court, the Settlement Agreement purports to consider the amount of the settlement checks as an "offset" stating:

> Offset. If a court or arbitrator finds that Employee's release of any claims under this agreement is invalid or unenforceable.  Company will have the right to obtain an offset for any amounts to which Employee is found to be entitled in any trial, arbitration, proceeding, settlement, or other disposition of any action pertaining to any wage any hour claims Employee has against company, including any rights Employee may have to recover compensation or settlement proceeds in a lawsuit involving the claims.

*See* Haines Decl., ¶ 3, Exh. B at ¶ 10.

The Settlement Agreement and Release is further improper in that it attempts to require putative class members to agree that that the claims being waived are "disputed claims," despite the fact that the Court has already established Safelite's liability as a

matter of law in granting Plaintiff's Motion for Partial Summary Judgment. Specifically, the Settlement Agreement and Release states as follows:

> Waiver of Disputed Claims.  Employee agrees that California Labor Code 206.5 is not applicable because there is a good faith dispute as to whether Company owes wages to Employee.  Section 206.5 provides, in pertinent, as follows: "*An employer shall not require the execution of a release of claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made.*"

*See* Haines Decl., ¶ 3, Exh. B at ¶ 6.

The Settlement Agreement and Release further attempts to improperly release claims brought under the Private Attorney General Act ("PAGA"), as: (1) none of the putative class members who Safelite is attempting to settle with were ever authorized to bring a PAGA claim on behalf of the LWDA as required by Code section 2699.3; (2) Safelite never obtained court approval of the PAGA release, as required by Labor Code section 2699(k)(2); and (3) Safelite did not provide any consideration to the LWDA as required by Labor Code section 2699(i).  *Slavkov v. Fast Water Heater Partners I, LP,* Case No. 14-cv-04324-JST, 2015 WL 6674575  (N.D. Cal., Nov. 2, 2015), is instructive of the problems with Safelite's attempt to dismiss the PAGA claim.  In *Slavkov* the employer improperly attempted to have its employees release claims brought under the PAGA, and ordered parties to send a curative notice to the putative class members who were offered a release informing them that the releases were invalid.  *Id.* at *2.  Judge Tigar of the Northern District reasoned as follows:

> Section 2(b) of the settlement agreement, entitled "Release of Claims raised in the Lawsuit," specifically provides that the claims released include those under the FLSA, PAGA, and the California Labor Code. ECF No. 54, Exh. 4 at 2. Neither the settlement agreement nor the two letters make any mention of the possibility of judicial approval — instead, the unmistakable perception is that accepting the Defendants' settlement offer will release *all* claims raised by Plaintiffs.
>
> This is no minor omission. The sole reason for Defendants' contact with the putative class was to solicit releases of their claims against Defendants, yet the letters neglected to inform the recipients that

some of those claims could not, in fact, be released solely through the proffered agreement.

***

Defendants cannot save themselves by suggesting, as they did at oral argument, that they can simply now apply for judicial approval. The Court's concern here is the misleading nature of the releases at the time they were offered, not whether they can ultimately be enforced. In any event, it is doubtful the settlement agreements are valid in light of the significant misinformation that accompanied them.

*Id.* at *6.

## III. <u>SUMMARY OF RELIEF SOUGHT</u>

Federal Rule of Civil Procedure 23(d) ('Rule 23(d)') permits a court overseeing a class action to issue orders which 'determine the course of proceedings' or 'impose conditions on the representative parties.' Fed. R. Civ. P. 23(d). Because class actions present opportunities for abuse as well as problems for courts and counsel in the management of cases...a district court has both the duty and the broad authority to supervise communication between the parties and potential class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981). "The Court's duty to supervise communications with potential class members exists even before a class is certified. Communications which are misleading 'pose a serious threat to the fairness of the litigation process, the adequacy of representation, and the administration of justice generally. Accordingly, a court may 'take action to cure the mis-communication and to prevent similar problems in the future' where 'potential class members have received inaccurate, confusing or misleading communications. The court's responsibility to monitor communications is heightened where potential class members are unrepresented by their own counsel." *Cheverez v. Plains all American Pipeline, LP*, No. CV15-4113 PSG (JEMx), 2016 WL 861107, at *2 (C.D. Cal. March 3, 2016).

For the reasons discussed herein, Plaintiff respectfully requests that the Court issue an Order to: (1) enjoin Defendant Safelite Fulfillment Inc. from entering into any further individual settlement agreements pending a ruling on Plaintiff's Motion for Class Certification, which is set for hearing on September 29, 2017; (2) invalidating those settlement agreements already entered into with putative class members as part of

the *Chindarah v. Pick Up Stix* campaign; (3) require a curative letter to be sent to the putative class; and (4) permitting Plaintiff to file a Motion for Sanctions against Safelite and its counsel for their improper conduct in connection with the *Chindarah* campaign.

Dated:  August 23, 2017                    HAINES LAW GROUP, APC

                                           ____/s/ Paul K. Haines _____
                                           Paul K. Haines, Esq.
                                           Attorneys for Plaintiff