1  Maria Z. Stearns (State Bar No. 230649)
   mstearns@rutan.com
2  Kenneth J. Zielinski (State Bar No. 258555)
   kzielinski@rutan.com
3  RUTAN & TUCKER, LLP
   611 Anton Boulevard, Suite 1400
4  Costa Mesa, California 92626-1931
   Telephone:  714-641-5100
5  Facsimile:   714-546-9035

6  Robert A. Harris, Ohio Registration No. 0059549 (*Pro Hac Vice*)
   VORYS, SATER, SEYMOUR AND PEASE LLP
7  52 East Gay Street
   Columbus, OH 43215
8  Telephone: (614) 464-6400
   Facsimile: (614) 464-6350
9  E-mail:  raharris@vorys.com

10 Attorneys for Defendant
   SAFELITE FULFILLMENT, INC.

11             UNITED STATES DISTRICT COURT
12             CENTRAL DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| 14  YADIR A. ONTIVEROS, as an individual, and on behalf of all others similarly situated, | Case No. 2:15-cv-07118-DMG-RAO |
| 16            Plaintiffs, | **DEFENDANT SAFELITE FULFILLMENT, INC.'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION** |
| 17       vs. | |
| 18  SAFELITE FULFILLMENT, INC., A Delaware Corporation; SAFELITE GROUP, INC., a Delaware Corporation; SAFELITE GLASS CORP., a Delaware Corporation; and DOES 1 through 10, | [Filed concurrently with Declaration of Maria Z. Stearns] |
| | Judge:       Hon. Dolly M. Gee |
| | Court Room: 8C |
| 21            Defendants. | |

23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

Case No.  2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE
APPLICATION

# **TABLE OF CONTENTS**

| | Page |
|---|---:|
| I. INTRODUCTION | 1 |
| II. SAFELITE PROVIDED WRITTEN SETTLEMENT OFFERS TO ITS CURRENT AND FORMER EMPLOYEES IN CALIFORNIA | 2 |
| III. PLAINTIFF'S *EX PARTE* APPLICATION MUST BE DENIED BECAUSE PLAINTIFF HAS NOT MADE A SHOWING OF IRREPARABLE HARM, IMMEDIATE DANGER, OR ANY OTHER BASIS FOR *EX PARTE* RELIEF | 2 |
| IV. CALIFORNIA LAW PERMITS PRE-CERTIFICATION COMMUNICATION WITH PUTATIVE CLASS MEMBERS, INCLUDING SOLICITATION OF INDIVIDUAL SETTLEMENT AGREEMENTS—*UNTIL A CLASS HAS BEEN CERTIFIED* | 3 |
| V. SAFELITE'S SETTLEMENT COMMUNICATIONS, INCLUDING THE INDIVIDUAL SETTLEMENT AGREEMENTS, HAVE ALL THE NECESSARY ELEMENTS FOR A VALID AND ENFORCEABLE *PICK-UP STIX* AGREEMENT | 6 |
|     A. Safelite Provided Its Current And Former Employees A Detailed Memorandum And Fact Sheet That Explained The Lawsuits And Settlement Offer | 6 |
|     B. The Settlement Communication Does Not Include False Or Misleading Statements, Nor Is It Coercive | 6 |
|     C. The Settlement Agreements and Releases Are Valid Because A Bona Fide Dispute Exists As To Whether Wages Are Owed | 9 |
| VI. SETTLEMENT OFFERS CAN BE ACCEPTED BY ANY METHOD PRESCRIBED BY THE OFFER | 12 |
| VII. CONTRARY TO PLAINTIFF'S MISREPRESENTATIONS, THE SETTLEMENT AGREEMENTS DO NOT RELEASE CLAIMS BEYOND THOSE AT ISSUE IN THIS LITIGATION | 13 |
| VIII. INDIVIDUAL SETTLEMENT AGREEMENTS DO NOT NEED COURT APPROVAL | 14 |
| IX. PLAINTIFFS DO NOT HAVE STANDING TO CHALLENGE THE INDIVIDUAL SETTLEMENT AGREEMENTS | 15 |
| X. CONCLUSION | 16 |

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-i-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*County of Santa Clara v. Astra USA, Inc.*,
  No. C 05-03740, 2010 U.S. Dist. LEXIS 78312 (N.D. Cal. July 8, 2010) ............................................................................................................. 8, 9

*Eshelman v. OrthoClear Holdings, Inc.*,
  No. C 07-01429 JSW, 2007 U.S. Dist. LEXIS 67857 (N.D. Cal. Sept. 4, 2007) ............................................................................................................. 8

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ............................................................................................................. 4, 8, 9

*Lazarin v. Pro Unlimited, Inc.*,
  No. C11-03609 HRL, 2013 U.S. Dist. LEXIS 97213 (N.D. Cal. July 11, 2013) ............................................................................................................. 12

*Lewis v. Safelite Fulfillment, Inc.*,
  11-cv-5512-CRB (N.D. Cal. Nov. 14, 2011) ............................................................................................................. 11

*Madrigal v. Tommy Bahama Group, Inc.*,
  2010 U.S. Dist. LEXIS 121573 (C.D. Cal. 2010) ............................................................................................................. 15

*Mission Power Engineering Co. v. Continental Casualty Co.*,
  883 F. Supp. 488 (C.D. Cal. 1995) ............................................................................................................. 1, 3

*Park v. Eastwood Ins. Servs., Inc.*,
  235 F. Supp. 2d 1082 (C.D. Cal. 2002) ............................................................................................................. 5

*Reynov v. ADP Claims Servs. Group, Inc.*,
  No. C 06-2056 CW, 2007 U.S. Dist. LEXIS 31631 (N.D. Cal. Apr. 30, 2007) ............................................................................................................. 10, 11

*Slavkov v. Fast Water Heater I, LP*,
  No. 14-cv-04324-JST, 2015 U.S. Dist. LEXIS 149013 (N.D. Cal. Nov. 2, 2015) ............................................................................................................. 14

*Stafford v. Brink's, Inc.*,
  No. CV-14-01352-MWF, 2016 U.S. Dist. LEXIS 184784 (C.D. Cal. March 8, 2016) ............................................................................................................. 1, 5

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-ii-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

**Page(s)**

**FEDERAL CASES (CONT.)**

*Tristan v. Allstate Ins.*,
   No. 95-0621-J (CGA), 1995 U.S. Dist. LEXIS 17554 (S.D. Cal. Oct. 16, 1995) ............................................................................................ 12

**STATE CASES**

*Aleman v. AirTouch Cellular*,
   209 Cal. App. 4th 556 (2012) ................................................................... 10

*Atari, Inc. v. Superior Court*,
   166 Cal. App. 3d 867 (1985) .................................................................. 3, 4

*Chindarah v. Pick Up Stix, Inc.*,
   171 Cal. App. 4th 796 (2009) ........................................................ 1, 4, 5, 6

*Koo v. Rubio's Restaurants Inc.*,
   109 Cal. App. 4th 719 (2003) ................................................................... 15

*Nordstrom Comm'n Cases*,
   186 Cal. App. 4th 576, 590 (2010) ..................................................... 10, 15

*Parris v. Superior Court*,
   109 Cal. App. 4th 285 (2003) ..................................................................... 4

*Watkins v. Wachovia Corp.*,
   172 Cal. App. 4th 1576 (2009) ........................................................ 10, 12, 15

**STATE STATUTES**

California Labor Code
   section 206 .......................................................................................... 10, 15
   section 206.5 ....................................................................................... 10, 15
   section 206.5(a) ......................................................................................... 10
   section 2699(l)(2) ...................................................................................... 14

**RULES**

California Central District Rules, rule 11-8 .................................................. 1

Rules of Professional Conduct 2-100 ............................................................ 4

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-iii-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

## I. INTRODUCTION.

Plaintiff Yadir Ontiveros' e*x parte* application seeks extremely broad relief on an *ex parte* basis **without** any showing of "irreparable harm, immediate danger or any other statutory basis for granting relief ex parte." *See Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995). In fact, Plaintiff ignores this Court's local rule that "Ex parte applications are solely for extraordinary relief and should be used with discretion." Plaintiff's contention that emergency relief "is required to prevent this *Chindarah* campaign from continuing, as it only began two days ago" does not warrant extraordinary relief. Plaintiff's *ex parte* application is procedurally improper because there is no emergency. Plaintiff's application should be rejected for this reason alone.[1]

In addition, Plaintiff's application is substantively without merit.

➢ ***First***, California law permits pre-certification communication with putative class members, including solicitation of individual settlement agreements. The only published California decision to examine the validity of individual settlement agreements in a wage and hour context, upheld their validity, as have many district court decisions. *See, e.g., Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 804 (2009); *Stafford v. Brink's, Inc.*, No. CV-14-01352-MWF (PLAx), 2016 U.S. Dist. LEXIS 184784 at *5 (C.D. Cal. March 8, 2016) (stating that "[b]ecause Defendant's settlement offers were sent before class certification only, the Court is not persuaded that an employee's acceptance of the offer, even after class certification, would [be] improper . . ." and rejecting plaintiff's argument that settlement agreements, even if accepted after class certification, are invalid).

➢ ***Second***, Safelite Fulfillment, Inc. ("Safelite") complied with all of the notice and disclosure requirements for obtaining valid and enforceable settlement agreements under *Chindarah*. Safelite's settlement documents resolve bona fide

---

[1] Plaintiff's e*x parte* application also fails to comply with Local Rule 11-8 which states "any memorandum of points and authorities or any brief exceeding ten (10) pages in length . . . shall be accompanied by an indexed table of contents . . . ."

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-1-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

1  disputed claims, are written in an easy-to-understand manner in English and Spanish, advise putative class members of the claims being alleged on their behalf, identify Plaintiff's counsel and contact information, and discuss the options available to them. Unlike the facts in many of the cases cited by Plaintiff, Safelite's settlement communication documents do not include misleading or inflammatory statements and are written in a way intended for a lay person to understand.

➤ ***Third***, a bona fide dispute exists between the parties as Safelite absolutely disputes liability. Safelite's *Pickup Stix* settlement offers are not a concession of liability.

➤ ***Fourth***, Plaintiff lacks standing to challenge the settlement agreements entered into between Safelite and its current and former employees.

## II. SAFELITE PROVIDED WRITTEN SETTLEMENT OFFERS TO ITS CURRENT AND FORMER EMPLOYEES IN CALIFORNIA.

On or about August 21, 2017, Safelite provided its current and former Technicians and Repair Specialists employed in California the following: (1) a memorandum explaining the nature of Plaintiff's lawsuits and Safelite's settlement offer ("Memo"); (2) a fact sheet explaining the lawsuits in more detail, Safelite's position disputing the claims, and Safelite's settlement offer ("Fact Sheet"); (3) an individual settlement agreement ("ISA"), and (4) a settlement payment check ("Settlement Check"). (Stearns Decl. ¶ 2, Exs. 1-4.) All documents were provided in English and Spanish. (*Id.*)

## III. PLAINTIFF'S *EX PARTE* APPLICATION MUST BE DENIED BECAUSE PLAINTIFF HAS NOT MADE A SHOWING OF IRREPARABLE HARM, IMMEDIATE DANGER, OR ANY OTHER BASIS FOR *EX PARTE* RELIEF.

Plaintiff's *ex parte* application should be denied because Plaintiff failed to comply with this Court's instruction with respect to *ex parte* applications. Nowhere in the application or in the attached declaration does Plaintiff make a factual showing

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-2-

Case No.  2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

of irreparable harm, immediate danger or any other statutory basis for granting relief *ex parte*.

In *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995), the court characterized *ex parte* applications as requiring a real emergency necessitating immediate relief to avoid irreparable harm:

> **Lawyers must understand that filing an ex parte motion . . . is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'  There had better be a fire.**

*Id*. at 492 (emphasis added).

Plaintiff's counsel is screaming *fire*, yet there is no fire here.  In reality, Plaintiff seeks *ex parte* relief because he is afraid that the vast majority of putative class members will choose to directly resolve their disputed claims with Safelite leaving Plaintiff with no basis for a representative action.  This hardly constitutes "irreparable harm, immediate danger or any other statutory basis for granting relief ex parte."

In fact, if the Court agreed with Plaintiff's argument that the settlement communications are misleading or coercive, then there is absolutely no need for expedited relief because the settlement agreements entered into between Safelite and its employees would still be invalid at any later stage in the litigation.

Standing alone, Plaintiff's failure to comply with the requirements of *ex parte* applications and this Court's local rule warrants denial of the *ex parte* application.

## IV. CALIFORNIA LAW PERMITS PRE-CERTIFICATION COMMUNICATION WITH PUTATIVE CLASS MEMBERS, INCLUDING SOLICITATION OF INDIVIDUAL SETTLEMENT AGREEMENTS—*UNTIL A CLASS HAS BEEN CERTIFIED*.

It is well-established that in wage and hour class action lawsuits, pre-certification communication by either side with putative class members is permissible. *Atari, Inc. v. Superior Court,* 166 Cal. App. 3d 867, 871 (1985) (holding that defendants have a right to communicate with putative class members); *see also*

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-3-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

*Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99-102 (1981) (holding parties or their counsel should not be required to obtain prior judicial approval before communicating with putative class members prior to certification of a class).  Indeed, in *Atari,* the California Court of Appeal expressly held that the predecessor of Rules of Professional Conduct 2-100 is *not* violated when defense counsel communicates with putative class members, and "neither party should be precluded from investigating and preparing the case." *Atari, Inc.,* 166 Cal. App. 3d at 871-73.

In a more recent case – *Parris v. Superior Court*, 109 Cal. App. 4th 285, 296-300 (2003) – the California Court of Appeal went one step further than the *Atari* court, holding that a trial court is without power to prohibit communications with putative class members absent a "showing of direct, immediate and irreparable harm." *Id.* at 300 ("Broad-based assertions that a proposed informational notice is 'unfair,' contains some inaccurate statements, or is presented in a misleading form are simply insufficient bases for imposition of judicial limitations on protected speech in the form of a prior restraint.").

A defendant's right to communicate with putative class members extends to solicitation of releases from putative class members in a wage and hour class action. *See Chindarah*, 171 Cal. App. 4th 796.  In *Pick-Up Stix*, the defendant employer attempted to settle directly with putative class members of a pending wage and hour class action. *Id.* at 798.  Ultimately, more than 200 former and current employees accepted the individual settlement offer and signed a settlement agreement, which included a general release. *Id.*  As part of the settlement agreement, the putative class members agreed not to participate in any class action that included the released claims. *Id.*  Eight of the putative class members who had signed the settlement agreement joined the class action as named plaintiffs and sought to invalidate the individual settlement agreements. *Id.*  The employer moved for summary judgment arguing that the settlement agreements barred recovery. *Id.*  The trial court agreed with the employer and granted its motion for summary judgment, which was affirmed

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-4-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE
APPLICATION

by the appellate court. *Id.* at 799, 804.

Here, contrary to Plaintiff's assertion, Safelite has not engaged in any improper conduct when communicating and soliciting individual settlement agreements with putative class members. Plaintiff's *unsupported* contention that Safelite "has waited too long to commence the *Chindarah* campaign" is unavailing and, in fact, has been squarely rejected by the Central District. Until a class has been certified, Safelite has a right to communicate with putative class members. *See, e.g., Park v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002) (citations and quotations omitted) (stating "Defendants ordinarily are not precluded from communications with individual class members before certification"); *see also, Stafford v. Brink's, Inc.*, No. CV-14-01352-MWF (PLAx), 2016 U.S. Dist. LEXIS 184784, at *5 (C.D. Cal. March 8, 2016) (stating that "[b]ecause Defendant's settlement offers were sent before class certification only, the Court is not persuaded that an employee's acceptance of the offer, even after class certification, would constitute improper ex parte communication . . ." and rejecting plaintiff's argument that settlement agreements, even if accepted after class certification, are invalid).

In *Stafford*, plaintiff filed suit on January 3, 2014. Over a year-and-half later, on July 28, 2015 and just months before the class was certified on December 1, defendant sent settlement offers to putative class members. In a motion for review of the class notice, plaintiff contended, *and the court rejected*, "that a settlement agreement is legally invalid if executed independently by a class member after certification" *Id.* In fact, the court "deni[ed] Plaintiff's request that Class Notice be sent to individuals who signed the settlement offer on or after" the date the class was certified. In doing so, the court upheld the validity of the settlement agreements which were based on settlement offers made just prior to class certification. *Id.*

Similar to the situation in *Stafford*, here Safelite has not engaged in any improper conduct by soliciting settlement offers from putative class members prior to a class being certified. Moreover, under *Stafford*, even settlement agreements

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-5-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

accepted after class certification are valid if the settlement offer was made prior to the class being certified. Plaintiff's conclusory contention that Safelite "waited too long to commence the *Chindarah* campaign" has no legal basis.

## V. SAFELITE'S SETTLEMENT COMMUNICATIONS, INCLUDING THE INDIVIDUAL SETTLEMENT AGREEMENTS, HAVE ALL THE NECESSARY ELEMENTS FOR A VALID AND ENFORCEABLE *PICK-UP STIX* AGREEMENT.

### A. Safelite Provided Its Current And Former Employees A Detailed Memorandum And Fact Sheet That Explained The Lawsuits And Settlement Offer.

Safelite provided its current and former Technicians and Repair Specialists employed in California with settlement communication documents. The Memo, Fact Sheet, and ISA (collectively, "Settlement Communication"), each play an integral role in providing the putative class members with the requisite information necessary for them to decide whether to accept Safelite's settlement offer.

### B. The Settlement Communication Does Not Include False Or Misleading Statements, Nor Is It Coercive.

Plaintiff asserts a myriad of arguments as to why the Settlement Communication is allegedly misleading and coercive. Each of Plaintiff's contentions are unwarranted and not convincing.

Moreover, the fact that putative class members contacted Plaintiff's counsel on August 21, 2017, i.e., the same day Safelite provided the Settlement Communication to its employees, is a testament to the non-coercive nature of the documents and underscores that the documents evenhandedly informed the employees that they could contact Plaintiff's counsel—***whose contact information was provided***—if they wanted to obtain a copy of the complaints, or if they had any additional questions. Additionally, when Plaintiff's counsel contacted Safelite about the Settlement Communication, Safelite promptly provided exemplars of the Settlement

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-6-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

Communication to Plaintiff's counsel—which Plaintiff admits. (*See* Plaintiff's *Ex Parte* Application at p. 2, lines 20-22 and p. 3, lines 1-5, Dkt No. 79.)

***First***, the Settlement Communication provides the employees with substantial information regarding the litigation and settlement offer. When read together, the Memo, Fact Sheet, and ISA provide ample information to Safelite's Technicians and Repair Specialists to decide whether to accept the settlement offer. For example, in the Memo, Safelite informs its employees that "A current and a former employee of Safelite AutoGlass® ('Plaintiffs') have each filed a lawsuit against Safelite on behalf of themselves and all other Technicians and Repair Specialists employed by Safelite in California" and that "You are receiving this notice because you are among the group of employees Plaintiffs seek to represent in the Lawsuits." (Stearns Decl., ¶ 2, Ex. 1.) The Memo further states "Plaintiffs allege that Safelite failed to do all of the following with respect to its Technicians and Repair Specialists: pay overtime and minimum wages; comply with California law prohibiting deductions from earned wages; provide compliant meal periods and rest breaks; provide accurate itemized wage statements; and timely pay all wages due." (*Id.*) Further, the Memo informs employees that "Safelite is offering a settlement payment to resolve the claims at issue in the Lawsuits." (*Id.*)

In the Fact Sheet, Safelite further explains: **(1)** what the lawsuit is about (e.g., the alleged claims at issue in the Lawsuits); **(2)** why Safelite is offering to resolve the claims (e.g.. that Safelite disputes the claims, but realizes litigation is uncertain); **(3)** what the settlement amount is and how it was calculated; **(4)** what happens if the current or former employee accepts the settlement offer; **(5)** what are the employee's options; **(6)** who to talk to if the employee has additional questions (including Plaintiff's attorney or any other attorney or advisor); and **(7)** the deadline by which to respond to the settlement offer. (Stearns Decl., ¶ 2, Ex. 2.)

In sum, the Settlement Communication provides the current and former employees with the requisite information necessary for them to decide whether to

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-7-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

accept the settlement offer. *See, e.g., Eshelman v. OrthoClear Holdings, Inc.*, No. C 07-01429 JSW, 2007 U.S. Dist. LEXIS 67857 (N.D. Cal. Sept. 4, 2007) (upholding settlement agreements stating "[a]t this stage, the potential class members have a written settlement offer, have been advised that this litigation is pending and that it may affect that it may affect their rights, and have the contact information for Plaintiffs' counsel").

**Second**, Plaintiff's unsupported contention that Safelite's Settlement Communication *had* to mention the Court's February 7, 2017 Order re Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment ("MSJ Order") is misguided. (*See* Dkt. No. 65.) There is no strict requirement of what a settlement communication must include, rather it must provide the putative class necessary information to choose whether to accept the settlement offer. *See, e.g., Gulf Oil*, 452 U.S. at 100.

Plaintiff's reliance on *County of Santa Clara*, is misplaced. *Id.* The *County of Santa Clara* is a consumer case in which defendant **conceded** it overcharged for drugs and plaintiff's legal theory of liability had been appealed and affirmed by the 9th Circuit. Unlike Safelite's Settlement Communication, the settlement offer in *County of Santa Clara* letter omitted a description of the complaint and the claims at issue, omitted plaintiffs' counsel's contact information, failed to inform putative class members that the Ninth Circuit Court of Appeals "had already vetted and approved the theory of the case, an important factor in examining the strength of a claim," and that acceptance of the proffered refund constituted a release of future claims. *Id.* at *6, 16.

Unlike *County of Santa Clara*, Plaintiff's legal theory of liability has not been confirmed on appeal and remains a majorly contested legal issue. Also, *unlike County of Santa Clara*, Safelite does not concede liability and its Settlement Communication provides a description of the lawsuit, the alleged claims, and Plaintiff's counsel's contact information, and the release is narrowly limited to claims related to the

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-8-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE
APPLICATION

lawsuit. These meaningful distinctions between the case posture and disclosure render *County of Santa Clara* inapplicable to this case.

***Third***, Plaintiff misleads the Court by stating that Safelite's Fact Sheet informed employees that "whether you will ultimately receive a payment from the Lawsuits is uncertain – you could receive less than the settlement amount **. . .** or nothing." (*See* Plaintiff's Ex Parte Application at p. 4, lines 10-13, Dkt. No. 79 (emphasis added).) When read in full and without the ellipses, one sees that Safelite also informed putative class members that if they rejected the Settlement Payment, they could also possibly receive **more** than was being offered by Safelite: "you could receive less than the Settlement Payment, **more than the Settlement Payment**, or nothing." (Stearns Decl. ¶ 2, Ex. 2 at p. 2, ¶ 5 (emphasis added).)

***Fourth***, Safelite was not required to physically attach copies of the complaints to the Settlement Communication. *See, e.g., Gulf Oil*, 452 U.S. at 100. Rather, Safelite identified the lawsuits (i.e., "(1) *Ontiveros v. Safelite Fulfillment, Inc., et al.*, filed in the United States District Court, Central District of California and assigned Case No. 2:15-cv-07118 ('*Ontiveros* Action') and (2) *Curiel v. Safelite Fulfillment, Inc.*, Los Angeles County Superior Court and assigned Case No. BC 652703 ('*Curiel* Action')" and informed employees that they could access the complaints from: (i) PACER and the court's website; (ii) by "contacting the attorneys representing Plaintiffs: Haines Law Group, APC, 2274 East Maple Ave., El Segundo, California 90245, (424) 292-2350;" or (iii) by contacting Safelite's People Business Partner, Denzil Barkley, at (916)767-1802. Even the *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740, 2010 U.S. Dist. LEXIS 78312, at *16 (N.D. Cal. July 8, 2010), which Plaintiff relies on (although its inapplicable for the reasons discussed above), recognizes that "there is no strict requirement to include a complaint."

### C. The Settlement Agreements and Releases Are Valid Because A Bona Fide Dispute Exists As To Whether Wages Are Owed.

Plaintiff's claim that the settlement agreements are invalid because of (1) the

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-9-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

Court's MSJ Order and (2) Safelite allegedly concedes that class certification is proper. Both arguments fail. Section 206.5 states that an:

> employer shall not require the execution of a release of a claim or right on account of *wages due*, or to become due, or made as an advance on wages to be earned, unless payment of those *wages* has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee.

Cal. Lab. Code § 206.5(a) (emphasis added).

California courts recognize that "section 206.5 must be read in connection with section 206, which requires an employer in a wage dispute to pay, without condition, all amounts conceded to be due, but does not require unconditional payment of disputed amounts." *Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556, 578 (2012). As a matter of law, "wages are not considered 'due' and unreleasable under Labor Code section 206.5, *unless* they are required to be paid under Labor Code section 206. When a bona fide dispute exists, the disputed amounts are not 'due,' and the bona fide dispute can be voluntarily settled with a release and a payment -- *even if the payment is for an amount less than the total wages claimed by the employee*." *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1587 (2009) (emphasis added). If "there is a good faith dispute as to whether and when commission wages were owed," then "[e]mployees may release claims for disputed wages and may negotiate the consideration they are willing to accept in exchange." *Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 590 (2010).

For example, in *Watkins*, when plaintiff was terminated, she believed she possessed a claim for further overtime pay and voluntarily elected to receive enhanced severance benefits in exchange for releasing her claims against Wachovia. *Watkins*, 172 Cal. App. 4th at 1587. Under these circumstances, the court found that release was enforceable. *Id.*; *see also Reynov v. ADP Claims Servs. Group, Inc.*, No. C 06-2056 CW, 2007 U.S. Dist. LEXIS 31631, at *9 (N.D. Cal. Apr. 30, 2007) (citations omitted) (noting "[b]ecause CSG's defense that Reynov was an exempt employee under California law would, if successful, preclude any recovery for Reynov, a bona

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-10-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

fide dispute exists and the overtime pay cannot be considered 'concededly due'"). The same rationale applies in this case and warrants a finding that the settlement agreements current and former employees entered into are enforceable.

***First***, the Court's MSJ Order does not establish liability, rather it held that Safelite's PPP Incentive Plan is a piece-rate compensation system. (*See* Dkt. No. 65 at p. 8 stating "The hypothetical demonstrates that the PPP was designed in such a way that minimum wage violations could result" and "The parties have not asked the Court to decide at this juncture whether violations did in fact occur".) Importantly, the Court has not found that there were violations or liability as to any particular employee. Even in light of the Court's ruling, Safelite in no way concedes liability. In fact, Safelite filed a motion for reconsideration and has asked for leave to appeal immediately because Safelite intends to appeal the Court's piece-rate determination. (*See* Dkt. No. 68.) Until there is a final judgment, the issue remains disputed.

***Second***, Safelite vigorously opposes class certification and Plaintiff's application misleads the Court in many respects. (*See* Safelite's Opp. to Class Cert., Dkt. No. 78.) For example, Safelite's opposition directly attacks Dr. Dumond's methodology of calculating damages. (*See id.* at pp 7-8.) Regardless, even if a class is certified, that does not establish liability as to any particular employee. Rather, it simply means that the action may proceed on a class basis. For example, Safelite intends, should some subclasses be certified, to move for summary judgment demonstrating that the class members suffered no actual wage loss and it would seek this ruling on a class wide basis.

***Third***, here, Safelite offered its employees $250 per year of employment since September 9, 2011 rounded up to the nearest year, despite that fact that Safelite settled a related class action, *Lewis v. Safelite Fulfillment, Inc.*, 11-cv-5512-CRB (N.D. Cal. Nov. 14, 2011), which resolved all claims related to overtime, meal period, minimum wage violations, and derivative claims occurring between November 14, 2007 and June 3, 2013. (*See* Dkt No. 50 at p. 5-6, ¶ 9; *see also* MSJ Order, Dkt No. 65 at p. 16,

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-11-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE
APPLICATION

lines 8-17.) That means, putative class members who worked during that time period and who accepted the settlement offer, essentially received an additional $500 for claims which have already been released—which amounts to a windfall for the employees. If an employee worked 1 year and 1 day, that employee received $500. And, if an employee worked 1 week, that employee received $250. Here, all employees who accepted the offer received between $250 and $1,500, with the average settlement amount being approximately $750—*not insignificant amounts in any respect under the circumstances*. (Stearns Decl. ¶ 3.)

In sum, Safelite vigorously disputes that any wages are owed and, as such, a bona fide dispute exists. Furthermore, under the circumstances, the amount offered by Safelite to its employees is a fair offer "even if the payment is for an amount less than the total wages claimed by the employee." *Watkins*, 172 Cal. App. 4th at 1587.

## VI. SETTLEMENT OFFERS CAN BE ACCEPTED BY ANY METHOD PRESCRIBED BY THE OFFER.

Acceptance of an offer, including a settlement offer, is the expression of assent to its terms. And, acceptance must generally be made in the manner specified by the offer. Under California law, cashing a check tendered in settlement of outstanding claims constitutes a valid acceptance of the settlement offer. *See, e.g., Tristan v. Allstate Ins.*, No. 95-0621-J (CGA), 1995 U.S. Dist. LEXIS 17554, at *1 (S.D. Cal. Oct. 16, 1995) (stating "[t]he check was cashed by Farmers, and under California law, this constitutes a valid acceptance of the settlement offer"); *see also Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 U.S. Dist. LEXIS 97213, at *6 (N.D. Cal. July 11, 2013) (noting that "Class Members opt in to the FLSA Settlement Class by cashing a check that will be mailed to them").

Here, Safelite's Settlement Communication repeatedly informs employees that they can accept "the Settlement Agreement and Settlement Payment by cashing, depositing, or otherwise tendering the enclosed Settlement Check, which constitutes your agreement to the terms of the enclosed Settlement Agreement." (Stearns Decl.

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-12-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

¶ 2, Ex. 3.) Section 2 of the ISA "Method of Acceptance" states:

> In order to accept the terms of this Agreement, Employee must cash, deposit, or otherwise tender the Settlement Check enclosed with this Agreement. This Agreement cannot be accepted by any other method. BY CASHING, DEPOSITING, OR OTHERWISE TENDERING THE SETTLEMENT CHECK, EMPLOYEE IS REPRESENTING THAT EMPLOYEE HAS READ THIS AGREEMENT IN ITS ENTIRETY AND THE ACCOMPANYING FACT SHEET AND THAT EMPLOYEE ACCEPTS THIS AGREEMENT, KNOWINGLY AND VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES. If Employee does not wish to accept the terms of this Agreement, Employee should not cash, deposit, or otherwise tender the enclosed Settlement Check.

(*Id.* ¶ 2, Ex. 3 at ¶ 2.)

In addition, similar language is repeated above the ISA signature block, in the signature block, and on the back of the settlement check in the endorsement section. (*Id.*). Given the documentation in this case, it cannot be reasonably disputed that cashing, depositing, or otherwise tendering the settlement check constitutes the employee's acceptance to the terms of the ISA. Plaintiff's contention (and the cases cited in support) that the ISAs must be "signed" is without legal or factual support.

## VII. CONTRARY TO PLAINTIFF'S MISREPRESENTATIONS, THE SETTLEMENT AGREEMENTS DO NOT RELEASE CLAIMS BEYOND THOSE AT ISSUE IN THIS LITIGATION.

The ISAs provide for a release of only those claims related to the lawsuits. Specifically, the ISA states that the employee "releases . . . Company . . . from any and all claims, causes of action, damages, attorneys' fees, and costs, whether known or unknown, that Employee has against any of the Released Parties up until the date Employee accepts this Agreement **related to the claims in the Lawsuits** . . . ." (Stearns Decl. ¶ 2, Ex. 3 at p. 1, ¶ 5 (emphasis added).) Plaintiff misleads the Court to believe that the ISAs release "unknown" claims beyond those related to the lawsuit; they do not. Because the release in the ISA is limited to the claims in this lawsuit, Plaintiff's reliance on a string of cases invalidating "overbroad" releases is inapposite.

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-13-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

## VIII. INDIVIDUAL SETTLEMENT AGREEMENTS DO NOT NEED COURT APPROVAL.

Plaintiff's argument that individual settlement agreements require court approval *misconstrues* Cal. Labor Code section 2699(l)(2) which provides "**[t]he superior court shall review and approve any settlement of any civil action filed pursuant to this part**" to suggest that the individual settlement agreements between Safelite and its employees must receive court approval. That is inaccurate. The ISAs entered into by Safelite are not a "settlement of any civil action filed pursuant to this part." Rather, they are individual agreements settling a dispute between Safelite and its current and former employees—not a "settlement of any civil action" which would require court approval. To the extent Safelite were to settle *this action* with Plaintiff, then section 2699(l)(2) would be triggered, but that is not the case here. If Plaintiff was correct on this point, then every single individual settlement agreement between an employer and its employee involving a wage and hour dispute would require court approval. That is not the law.

Plaintiff's reliance on *Slavkov v. Fast Water Heater I, LP*, No. 14-cv-04324-JST, 2015 U.S. Dist. LEXIS 149013 (N.D. Cal. Nov. 2, 2015) is misplaced because *Slavkov* involved a release of a FLSA claim, among other things. The *Slavkov* Court concluded that the settlement communications were misleading in two ways: (1) by confusingly suggesting putative members could not contact plaintiffs' counsel and (2) by omitting to mention that FLSA claims would require judicial approval to be released. *Id.* at *19-20.

Here, unlike the situation in *Slavkov*, (1) the parties stipulated to dismissal of the FLSA claim and the Court dismissed it and (2) Safelite's Settlement Communication provides Plaintiff's counsel contact information and repeatedly informs the employees that they could contact Plaintiff's counsel, or any other attorney or advisor. Thus, *Slavkov* is inapplicable to this case and of no value. (*See* Dkt. No. 44; *see also* Stearns Decl. ¶ 2, Ex. 2.)

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-14-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE
APPLICATION

## IX. PLAINTIFFS DO NOT HAVE STANDING TO CHALLENGE THE INDIVIDUAL SETTLEMENT AGREEMENTS.

It is evident from the relief Plaintiff seeks that he is ultimately seeking to invalidate the ISAs entered into between Safelite and its current and former employees. Plaintiff lacks standing to challenge the settlement agreements between Safelite and putative class members because: (1) Plaintiff does not represent a class and (2) Plaintiff did not sign an agreement. *See, e.g., Koo v. Rubio's Restaurants Inc.*, 109 Cal. App. 4th 719, 736 (2003) (stating putative class members are not deemed parties represented by class counsel before class certification); *Madrigal v. Tommy Bahama Group, Inc.*, 2010 U.S. Dist. LEXIS 121573 (C.D. Cal. 2010) (named plaintiffs cannot challenge releases that they did not sign); *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 590 (2010) (citing *Chindarah* decision) (stating that "[e]mployees may release claims for disputed wages and may negotiate the consideration they are willing to accept in exchange"); *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576 (2009) (holding that employer and employee may resolve an existing wage-and-hour dispute through a settlement and release).

In *Madrigal*, the named plaintiffs attempted to invalidate wage settlements, claiming the agreements violated Labor Code Sections 206 and 206.5. The named plaintiffs did not sign any wage settlements; instead, they alleged that some of the putative class had received "purported settlement checks." The court rejected the named plaintiffs' attempt to assert the claim, reasoning that plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at *12.

Here, by attempting to challenge the individual settlement agreements, Plaintiff and his counsel have potentially put themselves in a non-waivable conflict with the putative class members whose agreements they seek to challenge. These putative class members may not want their agreements invalidated. And, in fact, they have expressly stated that they do not want to participate in the lawsuit. (Stearns Decl.,

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-15-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

¶ 2, Ex. 3 at ¶ 9.)  Thus, Plaintiffs do not have standing to seek to challenge the agreements which they did not sign.

## X. CONCLUSION.

For the foregoing reasons, Safelite respectfully requests that the Court deny Plaintiff's *ex parte* application in its entirety.

Dated: August 24, 2017

VORYS, SATER, SEYMOUR AND PEASE, LLP

By:    */s/ Robert A. Harris*
Robert A. Harris
Attorneys for Defendant
SAFELITE FULFILLMENT, INC.

Rutan & Tucker, LLP
attorneys at law

2669/034072-0002
11311188.2 a08/24/17

-16-

Case No. 2:15-cv-07118
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION