**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Tuvia Korobkin (SBN 268066)
tkorobkin@haineslawgroup.com
Fletcher W. Schmidt (SBN 286462)
fschmidt@haineslawgroup.com
2274 E. Maple Ave.
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2228

Attorneys for Plaintiff

**VORYS, SATER, SEYMOUR AND PEASE LLP**
Robert A. Harris, Ohio Registration No. 0059549 *(pro hac vice)*
raharris@vorys.com
Daniel J. Clark, Ohio Registration No. 0075125 *(pro hac vice)*
dclark@vorys.coin
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-6400
Facsimile: (614) 464-6350

Attorneys for Defendant
*[Additional counsel listed on following page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YADIR A. ONTIVEROS, as an individual, and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SAFELITE FULFILLMENT, INC., a Delaware Corporation; SAFELITE GROUP, INC., a Delaware Corporation; SAFELITE GLASS CORP., a Delaware Corporation; and DOES 1 through 10,<br><br>                    Defendants. | Case No.: 2:15-cv-07118-DMG-RAO<br><br>**JOINT SUPPLEMENTAL STATEMENT REGARDING SETTLEMENT PROCEDURES**<br><br>Judge:  Hon. Dolly M. Gee |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Maria Z. Steams, State Bar No. 230649
mstearns@rutan.com
Kenneth . Zielinski, State Bar No. 258555
kzielinski@rutan.com
**RUTAN TUCKER, LLP**
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626
Telephone: (714) 641-5100
Facsimile: (714) 546-9035

Attorneys for Defendant

1

JOINT STATEMENT RE SUPPLEMENTAL BRIEFING ON SETTLEMENT PROCEDURES

# I.   INTRODUCTION

On April 10, 2019, the Court invited supplemental briefing on whether "allowing an opt-out settlement to release opt-in FLSA claims is proper, or whether the notice given to class members regarding the waiver contained in the settlement was sufficiently specific."  Order [Doc. No. 133], at 2.  The parties submit that the Court may properly approve a class action release that includes FLSA claims when there are no FLSA claims asserted in the case.  Indeed, because there is no collective action or even FLSA claim in the operative complaint in this case, there is nothing for class members to "opt-in" to.[1]  Further, the proposed notice in this class clearly and expressly informs class members that they will be releasing FLSA claims for allegedly unpaid overtime wages by joining the Settlement, and the settlement is otherwise fair and reasonable.

# II.   The Court May Approve A Class Action Settlement Agreement That Releases Flsa Claims Without An Opt-In Mechanism.

## A.   The Court May Approve A Broad Release That Includes Claims Not Currently Before It.

It is well-settled that a court may approve a settlement agreement that includes claims not currently before the court.  "A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action" where the released claim is "based on the identical factual predicate as that underlying the claims in the settled class action."  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotations omitted); *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1111 (9th Cir. 2018) (upholding a broad release of "factually related claims," whether or not a class member could bring that claim, as "[s]ettlements of this breadth are common and

---

[1] "A collective is not formed until other plaintiffs file consent forms with the court joining (that is, 'opting into') the original named plaintiff's case."  *Rangel v. PLS Check Cashers of Cal., Inc.,* 899 F.3d 1106, 1109 n.1 (9th Cir. 2018) (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013); *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1122-23 (9th Cir. 2009)).

unobjectionable."); *Rangel v. PLS Check Cashers of Cal., Inc.*, CV 16-6119, 2016 U.S. Dist. LEXIS 162956, at *15, 2016 WL 6821788 (C.D. Cal. Nov. 16, 2016), *aff'd*, 899 F.3d 1106 (9th Cir. 2018) (recognizing "the Ninth Circuit's long-standing rule that a settlement agreement may bar a future, related action even where the later claim was not initially presented.").

Further, this Court has recognized that plaintiffs can voluntarily release FLSA claims. "A voluntary release of statutory rights in the settlement of a wage dispute is distinguishable from an unlawful waiver obtained by force, duress, or nonpayment." *Rangel*, 2016 U.S. Dist. LEXIS 162956, at *10 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 703-07 (1945) (statutory rights under the FLSA are not waivable "in the absence of a bona fide dispute between the parties as to liability")).

B.     The Purpose of the FLSA's Opt-In Procedure Is To Limit Representative Actions, Not Preclude A Release Of Claims.

Section 216(b) of the FLSA provides:

> An action to recover the liability prescribed in [the FLSA] may be maintained against any employer [] in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. §216(b).

Congress did not enact this provision to provide plaintiffs additional opportunities to pursue class actions or to limit releases of FLSA claims. "To the contrary, it was part of an effort by Congress in 1947 to limit FLSA liability for employers." *Cotter v. Lyft, Inc.*, No. 13-cv-04065-VC, 2017 U.S. Dist. LEXIS 38256, at *5-6, 2017 WL 1033527 (N.D. Cal. Mar. 16, 2017), *aff'd,* 2017 U.S. App. LEXIS 20101 (9th Cir. Sept. 15, 2017) (citing 29 U.S.C. §251; *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)); *see also Harris v. Investor's Bus. Daily, Inc.*, 138 Cal. App. 4th 28, 34 (2006) ("The legislative history clearly indicates that the purpose of the amendment was to protect

3

1    employers from facing 'financial ruin' and prevent employees from receiving 'windfall

2    payments, including liquidated damages.'").  Thus, "Congress amended the statute to

3    limit the ability of workers to participate in FLSA actions, allowing participation only

4    when a worker affirmatively opts in, as opposed to before, when a 'class' in an FLSA

5    action could include anyone who didn't opt out." *Id.* (citing *Portal*-to-Portal Act of

6    1947, Pub. L. No. 80-49, § 5, 61 Stat. 84, 87).  As the Ninth Circuit explained, Congress

7    amended the FLSA for the purpose of limiting private FLSA plaintiffs to employees

8    who asserted claims in their own right and freeing employers of the burden of

9    representative actions." *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 529 (9th Cir.

10    2013) (internal quotations omitted), *rev'd on other grounds*, 135 S. Ct. 513 (2014).

11        While a plaintiff may only *bring* a collective action under the FLSA by

12    complying with written opt-in requirement of section 216(b), nothing in section 216(b)

13    precludes the release of unpled FLSA claims by class members in a Rule 23 action.

14    Other than the general requirement that a court or the Department of Labor approve a

15    settlement as fair and reasonable, there is nothing in the language of section 216 (or

16    anywhere in the FLSA) that imposes a barrier on how or whether FLSA claims may be

17    *released*.  "[T]he statute by its terms imposes no such restriction." *Stephens v. Farmers*

18    *Rest. Grp.*, No. 17-1087, 2019 U.S. Dist. LEXIS 24910, at *30, 2019 WL 652402

19    (D.D.C. Feb. 15, 2019).  Unlike the opt-in procedures *to join* an action, the FLSA does

20    not provide any special procedure that must be followed to *settle or release* an FLSA

21    claim.  The FLSA "says nothing as to whether an employee may be bound by a court-

22    approved settlement releasing FLSA claims that otherwise meets the requirements of

23    Rule 23 and settles a bona fide dispute." *Id.*

24        In *Cotter*, the Northern District confronted the same question that the Court raises

25    here: whether a Rule 23 class action settlement releasing FLSA claims may be approved

26    without an opt-in mechanism. The Northern District concluded that the court may

27    properly do so:

28

JOINT STATEMENT RE SUPPLEMENTAL BRIEFING ON SETTLEMENT PROCEDURES

> In short, the statutory language does not bar the release of unasserted FLSA claims in Rule 23 class actions, and ***there is nothing about the purpose behind this language that should cause a district court to decline to approve such a waiver***. In other words, there is no greater reason to prevent Rule 23 class settlements from releasing unasserted FLSA claims than there is to prevent those settlements from releasing other unasserted claims that arise from the facts of the case.

*Cotter*, 2017 U.S. Dist. LEXIS 38256, at *6-7 (emphasis added) (granting final approval to Rule 23 settlement that included a release of FLSA claims). *See also Richardson v. Wells Fargo Bank, N.A.,* 839 F.3d 442, 452 (5th Cir. 2016) (holding that "the FLSA does not create a special exception that prohibits the enforcement of settlement agreements that release FLSA claims as part of an opt out class action."). Indeed, the *Cotter* court held a hearing on this very issue noting that, "I don't know how you get from statutory language that was enacted to restrict people's ability to participate in – as FLSA plaintiffs – to a conclusion that that same language prevents people or protects from – from releasing their FLSA – potential FLSA claims when state law claims are being settled. The distance between one and the other seems vast." *Cotter*, Case No. 3:13-cv-04065-VC, Transcript of Proceedings [Doc. #316], p. 17:8-13;[2] *see also Richardson*, 839 F.3d at 451 (noting "[i]t takes an additional step to conclude that the FLSA prohibits state courts from supervising and approving an opt out class settlement that releases FLSA claims, and this step is not supported by §216(b).").

C.   Cases Holding That An Opt-In Mechanism Must Be Included Are Distinguishable.

Cases requiring that an opt-in mechanism be included in a Rule 23 settlement agreement are distinguishable because each of those cases involved a hybrid class and collective action in which FLSA claims were actually being asserted. *See Tijero v.*

---

[2] A true and accurate copy of the relevant pages from the *Cotter* Transcript of Proceedings is attached as Exhibit A. The Parties request the Court to take judicial notice under Federal Rule of Evidence 201 of this Transcript. *See Rangel*, 2016 U.S. Dist. LEXIS 162956, at *2 (noting the Court "may take judicial notice of records of another court, as well as documents that are publicly available via the online PACER system").

JOINT STATEMENT RE SUPPLEMENTAL BRIEFING ON SETTLEMENT PROCEDURES

*Aaron Bros., Inc.*, No. C 10-01089 SBA, 2012 U.S. Dist. LEXIS 183238, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013); *Khanna v. Inter-Con Sec. Systems, Inc.*, 2012 U.S. Dist. LEXIS 137651, 2012 WL 4465558 (E.D. Cal 2012); *Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 47515, 2007 WL 1793774 (N.D. Cal 2007); *La Parne v. Monex Deposit Co.*, 2010 U.S. Dist. LEXIS 1310293, 2010 WL 4916606 (C.D. Cal. 2010).  But unlike in those cases, there are no FLSA claims in the *Ontiveros* action. *See* Second Amended Complaint [Doc. #134].

In *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, 2014 U.S. Dist. LEXIS 111734, 2014 WL 3956463 (N.D. Cal. Aug. 12, 2014), no FLSA claims were asserted in the case, and the court held that "FLSA claims cannot be treated within a class action under Rule 23." *Id.* at *11.  Similarly, in *Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761-JD, 2014 U.S. Dist. LEXIS 159790, 2014 WL 6065602 (N.D. Cal. Nov. 12, 2014), the court held that the Rule 23 settlement "does not work for the compromise or release of FLSA claims."  *Id.* at *9.  Both courts cited to *Tijero* and *Kakani* to support their reasoning, but failed to acknowledge that their cases, unlike *Stokes and Myers*, did not include FLSA claims.

Moreover, subsequent courts reviewing these decisions have held that *Stokes* and *Myles* are wrongly decided.  Indeed, the holding in *Stokes* was specifically rejected by the Northern District in *Cotter*.  In *Cotter*, Judge Chhabria said that "the judge [in *Stokes*] didn't explain why it's totally inappropriate to do that, and didn't cite any authority for the proposition it's totally inappropriate to do that."  *Cotter*, Transcript of Proceedings, p. 7:16-20.  Additionally, those cases "don't provide any statutory authority for why it's inappropriate."  *Id.* at 9:12-18.

Further, a recent decision from the D.C. District Court rejected even the argument that a settlement agreement in a hybrid class and collective action must include an opt-in mechanism and, therefore, preliminarily approved the settlement at issue.  *Stephens*, 2019 U.S. Dist. LEXIS 24910.  The court in *Stephens* held that section 216(b) does not

preclude such settlements, and such a settlement would have a preclusive effect because the FLSA:

> says nothing as to whether an employee may be bound by a court-approved settlement releasing FLSA claims that otherwise meets the requirements of Rule 23 and settles a bona fide dispute. Furthermore, if a Rule 23 class were to adjudicate members' state law wage and hour claims on the merits, it would likely have preclusive consequences on any comparable claims under the FLSA based on the same underlying facts and held by those members who failed to opt out of the class. The Court therefore finds it senseless to categorically preclude a settlement agreement with the same effect.

*Id.* at *28.  The *Stephens* court then explained that decisions holding to the contrary "rest on an unduly expansive reading of §216(b), and they make little effort to reconcile that reading with the fundamental principles of *res judicata* and the existing framework courts have at their disposal to ensure that proposed settlement agreements are fair and reasonable."  *Id.* at *29.  *See Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 132 (D. Colo. 2016) ("This court is in agreement with courts which have found that normal *res judicata* principles apply in hybrid FLSA/Rule 23 collective/class actions, thus binding non opt-out Rule 23 Class Members who do not specifically opt-in to the release of FLSA claims to the ultimate judgment, unless such a claimant shows grounds for collateral attack on the judgment.").

Here, as in *Stephens*, the *Ontiveros* Settlement Agreement would have preclusive effect (*i.e.*, res judicata) on comparable claims under the FLSA based on the same underlying facts and held by those members who do not opt out. *See id.* at *28.  In fact, this Court has likewise recognized that "the binding effect of an FLSA waiver in a class action settlement dovetails with the purpose of res judicata."  *Rangel*, 2016 U.S. Dist. LEXIS 162956, at *15.  And the Ninth Circuit has explained that "res judicata in the settlement context tends to resemble waiver or release" and the outcome "is the same regardless."  *Rangel*, 899 F.3d at 1110 n.3.  Therefore, it makes little sense to require an

opt-in procedure now when class members who do not opt out would be bound by *res judicata* later.

## III.   The Parties' Class Action Notice Expressly Informs Putative Class Members Of The Release Of Flsa Claims.

The Court further invited the Parties to address "whether notice given to class members regarding the waiver contained in the settlement was sufficiently specific." Order, p. 2.  The Parties respectfully submit that it is.  The Notice of Class and Representative Action Settlement [Doc. #130-1] informs putative class members that "[u]nless you timely opt out of the Settlement, if you are a Settlement Class Member you shall fully and finally release and discharge all Released Parties of all Released Claims.  Moreover, you shall be permanently enjoined and forever barred from prosecuting any and all Released Claims against the Released Parties." *Id.* at 7.  The Notice then clearly defines who is a "Released Party" (Safelite Fulfillment, Inc.) and what are the "Released Claims."  As to what claims will be released by joining the Settlement, the Notice specifically refers to FLSA claims:

> any and all claims pled in the Second Amended Complaint in the Ontiveros Action, or which could have been pled based on the factual allegations in and operative facts relevant to the Second Amended Complaint under federal, state, or local law, including, but not limited to: ... (2) failure to pay overtime wages under the Fair Labor Standards Act ("FLSA") ...

*Id.*  Thus, class members will be specifically informed that they will be waiving, among other claims, overtime claims under the FLSA.  While the settlement is not limited to claims that class members "were functionally capable of bringing," "[s]ettlements of this breadth are common and unobjectionable." *Rangel*, 899 F.3d at 1111.

In rejecting the need for an opt-in mechanism to release FLSA claims, the *Cotter* court explained that, instead, "[w]hat matters is that the settlement terms are fair and reasonable in light of all the claims being released (asserted or not), that class members receive appropriate notice of the proposed settlement, and that class members be given the chance to opt out of the class if they wish to preserve their own claims." *Cotter,*

8

2017 U.S. Dist. LEXIS 38256, at *7.  *See also Stephens*, 2019 U.S. Dist. LEXIS 24910, at *29 (approving settlement in hybrid action that lacked an opt-in procedure, explaining that courts have procedures "at their disposal to ensure that proposed settlement agreements are fair and reasonable."); *Richardson*, 839 F.3d at 455 (rejecting a constitutional challenge to class action notice where the notice was "clear and sufficient to apprise class members that the settlement included the release of FLSA claims."). While the Court will ultimately determine whether the settlement terms are fair and reasonable (the Parties submit that they are), the class members will receive notice of the settlement, be informed that the settlement releases FLSA claims, and be informed that they may opt-out of the settlement to preserve their claims.

As such, the *Ontiveros* Settlement Agreement is arguably more protective of putative class members' rights than the settlement agreement at issue in *Rangel*.  There, the class action settlement release did not specifically inform class members they would be releasing potential FLSA claims unless they opted-out.  *See Rangel*, 899 F.3d at 1109.  Here, by contrast, the *Ontiveros* release specifically names the FLSA and expressly informs class members that their right to overtime compensation under the FLSA would be released.  It would be incongruous to approve a release that does not identify FLSA claims, but disapprove one that does, even though the ultimate result is identical.

IV.    **Conclusion**

Unless they opt-out of the settlement, class members will receive compensation for their overtime claims in a court-approved settlement.  In return, the class members are expressly and specifically informed that they will release, *inter alia,* claims for overtime compensation under the FLSA.  "The procedural safeguards in Rule 23 requiring sufficient notice, adequate representation, and judicial approval of the class settlement were intended to mitigate against the potentially harsh consequences of *res judicata*."  *Kuncl v. IBM*, 660 F. Supp. 2d 1246, 1254 (N.D. Okla. 2009).  By contrast,

JOINT STATEMENT RE SUPPLEMENTAL BRIEFING ON SETTLEMENT PROCEDURES

requiring class members to also affirmatively opt-in in order to release their FLSA claims does not advance the congressional intent behind §216(b) – "limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 173 (1989). For these additional reasons, the parties submit that neither the settlement agreement nor the class notice need to be revised or include an opt-in mechanism.

Dated:  April 19, 2019

HAINES LAW GROUP, APC

*/s/ Paul K. Haines*
Paul K. Haines, Esq.
2274 E. Maple Ave.
El Segundo, California 90245
Tel: (424) 292-2350

*Attorneys for Plaintiffs*

VORYS, SATER, SEYMOUR AND PEASE LLP

*/s/ Robert A. Harris*
Robert A. Harris
Daniel J. Clark
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-6400

*Attorneys for Defendants*

Pursuant to Local Rule 5-4.3.4, I, Paul K. Haines, hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated:  April 19, 2019

*/s/ Paul K. Haines*
Paul K. Haines

JOINT STATEMENT RE SUPPLEMENTAL BRIEFING ON SETTLEMENT PROCEDURES

# EXHIBIT A

Pages 1 - 65

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA, JUDGE

PATRICK COTTER, ALEJANDRA          )
MACIEL, and JEFFREY KNUDTSON,      )
on behalf of themselves and        )
all others similarly situated,     )
                                   )
          Plaintiffs,              )
                                   )
  VS.                              )    **No. C 13-4065 VC**
                                   )
LYFT, INC.,                        )
                                   )
          Defendant.               )
_____   )    San Francisco, California
                                        Thursday, December 1, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                         LICHTEN & LISS-RIORDAN, P.C.
                         729 Boylston Street, Suite 2000
                         Boston, Massachusetts 02116
                    **BY:  SHANNON LISS-RIORDAN, ESQUIRE**

                         LICHTEN & LISS-RIORDAN, P.C.
                         466 Geary Street, Suite 201
                         San Francisco, California 94102
                    **BY:  MATTHEW D. CARLSON, ESQUIRE**

For Defendant:
                         KEKER & VAN NEST LLP
                         633 Battery Street
                         San Francisco, California  94111
                    **BY:  RACHAEL E. MENY, ESQUIRE**
                         **R. JAMES SLAUGHTER, ESQUIRE**
                         **ALEXANDER DRYER, ESQUIRE**

(Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, RPR, CRR
               Official Reporter - U.S. District Court

**APPEARANCES (CONTINUED):**

For Defendant:

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART PC
One Market Plaza, Suite 1300
San Francisco, California  94105
BY:  **THOMAS M. MCINERNEY, ESQUIRE**

For Objectors:

BEESON, TAYER AND BODINE
483 Ninth Street, Suite 200
Oakland, California 94607
BY:  **LORRIE ELIZABETH BRADLEY, ESQUIRE**

BEESON TAYER BODINE
520 Capitol Mall, suite 300
Sacramento, California 95814
BY:  **ROBERT BONSALL, ESQUIRE**

Also Present:          William Green, Attorney at Law
                       Mr. Andrew Yasinsac
                       Mr. Jimmy Young
                       Mr. Colin Patrowski

| | |
|---|---|
| 1 | **Thursday - December 1, 2016**                    **10:04 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Calling case number 13-cv-4065, Cotter |
| 5 | versus Lyft Inc. |
| 6 | Counsel, please step forward and state your appearances |
| 7 | for the record. |
| 8 | **MS. LISS-RIORDAN:**  Good morning, Your Honor.  For the |
| 9 | plaintiffs I'm Shannon Liss-Riordan.  With me is Matthew |
| 10 | Carlson. |
| 11 | **THE COURT:**  All right. |
| 12 | **MR. SLAUGHTER:**  Good morning, Your Honor.  James |
| 13 | Slaughter, Rachael Meny, and Alexander Dryer from the Keker |
| 14 | firm, along with Tom McInerney from Ogletree. |
| 15 | **THE COURT:**  Good morning. |
| 16 | **MR. SLAUGHTER:**  Good morning. |
| 17 | **MR. BONSALL:**  Good morning, Your Honor. Robert Bonsall |
| 18 | and Lorrie Bradely for Teamsters, objectors. |
| 19 | **THE COURT:**  Good morning. |
| 20 | **MS. BRADLEY:**  Good morning. |
| 21 | **THE COURT:**  Okay.  So given the number of things that |
| 22 | were filed in a flurry of activity, we were sort of expecting |
| 23 | that we might need an overflow courtroom.  So that's why we |
| 24 | have this camera, just because we thought it might be needed |
| 25 | for an overflow courtroom.  But apparently not. |

1      Okay.  So there are -- there are a bunch of objections

2   that were raised in some form or another during the preliminary

3   approval process.

4      And there are a bunch of objections that are not -- that

5   were not raised during the preliminary approval process, either

6   substantive objections or objections to the procedures that got

7   us to this point of the final approval hearing.

8      I will say to the -- I think this is primarily to the

9   Teamsters.  Why don't you come on up, and why don't you join

10  your friends on this side of the aisle so that we can --

11  Ms. Liss-Riordan, why don't you take that side.  And then why

12  don't the objectors, sort of, take this podium.

13     I will tell you that I've reviewed all of your submissions

14  and all of the submissions of all the other objectors.  And the

15  ones that we already considered at the preliminary approval

16  stage, I haven't changed my mind on any of those.

17          **MR. BONSALL:**  Thanks.

18          **THE COURT:**  So you are free, if you want to sort of

19  briefly, you know, add anything that you want to add on the

20  issues that were already raised and considered at the

21  preliminary approval stage.

22     But I will tell you that although I have considered the

23  additional comments made by you and by the other objectors, I

24  have not changed my mind on those things.  I'm mostly

25  interested in talking about the new objections and the new

1   issues.

2       And with respect to that, I guess I have -- there are two

3   primary things that I want to talk about.  I'm happy to hear

4   about and talk about other -- other issues.  But the two

5   primary things that I want to talk about are the FLSA issue --

6           **MR. BONSALL:**  Yes.

7           **THE COURT:**  -- and the -- and the question whether we

8   should reopen the process for perhaps some sort of further

9   notice to the class and perhaps some further opportunity to

10  object or opt -- or submit a claim form or opt out based on a

11  variety of concerns that have been raised about the process by

12  which class members were notified.

13      So those are the two primary things that I -- I would be

14  interested in discussing.  Like I said, I'm happy for people to

15  be heard on anything else.  And maybe we could start with

16  the -- with the FLSA issue.  You know there are all these cases

17  on res judicata.

18          **MR. BONSALL:**  Yes.

19          **THE COURT:**  And I think that the res judicata question

20  only gets -- those res judicata cases only get them so far;

21  right.

22      Because if you have a Rule 23 opt out class action and it

23  includes a waiver or a release of claims, and the release

24  covers FLSA claims, and then judgment is entered pursuant to

25  that settlement that contains that release, and then there's

1  another lawsuit, the question is whether the judgment approving

2  that settlement agreement is res judicata.

3       And when you're asking whether a judgment is res judicata,

4  you're not asking whether the judgment was right or wrong.

5  You're asking whether it should be honored; right?

6       So in some ways those cases don't get us all the way to

7  the question whether it is right or wrong to have a Rule 23

8  settlement agreement, a Rule 23 judgment of state law

9  wage-and-hour claims that releases FLSA claims.  On the other

10  hand, I'm not sure I see what's wrong with a Rule 23 settlement

11  of state law wage-and-hour claims that releases FLSA claims.

12       I have read, I think, every case on this issue now, and

13  I've read the statute, and we've looked at the legislative

14  history and Congressional findings through the statute.  And I

15  can't -- I can't find anything that -- either as a legal matter

16  or as a policy matter, frankly, that suggests that it's

17  inappropriate for a Rule 23 class to release FLSA claims that

18  are not part of the lawsuit, that were not asserted as part of

19  the lawsuit.

20       What am I missing?

21       **MR. BONSALL:**  I think that you fundamentally have

22  stated the law quite clearly.  I think the objectors would

23  agree with essentially every point that you've raised.

24       We would point out that the statute itself is exceedingly

25  clear that under 216(b) of the FLSA no employee shall be a

```
1   party plaintiff to any such action unless he gives his consent

2   in writing to become such a party.

3            THE COURT:  Party plaintiff to any FLSA action.

4            MR. BONSALL:  That's correct.

5            THE COURT:  But this isn't an FLSA action.

6            MR. BONSALL:  Yes.  There --

7            THE COURT:  So how could that language, in its literal

8   terms, apply to this situation?

9            MR. BONSALL:  Well, this court -- not this particular

10  court, but in Stokes, we had a very comparable situation where

11  judge --

12           THE COURT:  I know.  I read Stokes.  And the judge in

13  Stokes said it's wholly inappropriate to do this.

14           MR. BONSALL:  And that was a case where FLSA was not

15  alleged.

16           THE COURT:  Right.  But the judge didn't explain why

17  it's totally inappropriate to do that, and didn't cite any

18  authority for the proposition it's totally inappropriate to do

19  that.  And as I'm sitting here today, I can't think of a reason

20  why it's totally inappropriate to do that.

21       So far what you've given me is the language of the

22  statute.  The language does not apply to this situation.  The

23  language itself does not apply to this situation because the

24  language is about the circumstances under which people can be

25  plaintiffs in FLSA actions.
```

So the question is:  Why is it inappropriate to do this?

MR. BONSALL:  An individual is giving up some rights that the Congress has enacted and specifically laid out a procedure for claiming overtime rights under federal law.

The waiver in this case, that the settling parties are proposing, will implicate the federal rights that exist by individual drivers, whether they be part-time or full-time, in a way which is inconsistent with the statute.  They will be bound by this without ever having opted in.

THE COURT:  But I don't -- I don't understand that exactly because -- I mean, that happens in class action -- that general thing happens in class action settlements all the time.

People file lawsuits on behalf of a proposed class.  The class gets certified.  There's a settlement.  The settlement releases not just the claims that were asserted in the lawsuit but any claims that arise out of the same facts and could have been asserted in the same lawsuit.

MR. BONSALL:  Yes.

THE COURT:  And why should FLSA claims be treated differently from any other type of claim that can be released in a class action settlement even though it wasn't -- that claim wasn't asserted in the lawsuit?

MR. BONSALL:  Well, I think for two reasons.  And it really goes back to what I've already tried to articulate.

The courts have recognized that there is a fundamental and

```
 1    irreconcilable difference between a class action under Rule 23
 2    and FLSA.  I concede that this is not an FLSA suit.  However,
 3    when one looks at the legal authority there's no split of
 4    authority on this issue.
 5         There is a -- I think, as the settling parties have
 6    pointed out, some cases -- *Richardson* is the one case out of
 7    the Fifth Circuit; and a case, the *Rangel vs. PLS*, which was
 8    just submitted last night -- that deal with what you
 9    articulated in the beginning, which is a res judicata --
10         **THE COURT:**  Right.  I get all that.
11         **MR. BONSALL:**  Right.
12         **THE COURT:**  I'm just trying to understand why it is
13    inappropriate -- what is the reason it is inappropriate to
14    waive -- I understand what the cases say.  I understand there
15    are cases that say it's inappropriate.  But, as I said, those
16    cases don't explain why it's inappropriate, and they don't
17    provide any statutory authority for why it's inappropriate.
18         So I'm asking you, tell me in plain English, why is it
19    inappropriate?
20         **MR. BONSALL:**  I don't think there's a fundamental
21    difference between a plaintiff that asserts in California an
22    overtime violation of daily and weekly overtime and fails to
23    assert an FLSA right for 40 hours in the workweek and a
24    plaintiff who doesn't.  There's really fundamentally no
25    difference.
```

1    In this particular case, there have been assertions of

2  daily and weekly overtime.  And the Teamsters have repeatedly

3  tried to urge the Court to look closely at the rights of these

4  full-time drivers, those that work many hours every day and

5  many days during the week, that are functioning like full-time

6  employees of Lyft.  That has been the focus of our concern all

7  along.

8    There is no fundamental difference between what was

9  alleged in this case and an FLSA claim.  And the clear weight

10 of authority strongly suggests that it would be improper to

11 knowingly --

12         THE COURT:  Why?  Why?

13      MR. BONSALL:  Because the statute requires --

14         THE COURT:  But the statute --

15      MR. BONSALL:  -- people to opt in.

16         THE COURT:  The statute does not speak to this

17 situation, when claims are being released that weren't asserted

18 in the lawsuit.

19      MR. BONSALL:  But the waiver will compromise those

20 very claims.  That's what the waiver will do.

21         THE COURT:  Yes, but what language in the statute or

22 what language in the legislative history to the statute

23 suggests that that is not allowed or that is not appropriate?

24      MR. BONSALL:  I think that 216(b) specifically says

25 that in such actions -- and no one can recover FLSA rights

 1   unless they file an action.  They're going to be bound by this

 2   even though they have not opted in.  And every court, whether

 3   it's the Fifth Circuit --

 4        **THE COURT:**  You keep saying "every court."  But -- I

 5   mean, I will say that some of those res judicata decisions do

 6   opine that there's nothing wrong with it, even though that's

 7   not squarely presented in the --

 8        **MR. BONSALL:**  Well, that's not exactly correct.

 9        **THE COURT:**  I think that's true of Judge Gee's -- I

10   mean, I think Judge Gee is implying that there's nothing wrong

11   with it, in the way she describes her ruling.

12        **MR. BONSALL:**  The *Richardson* case, which was cited by

13   the settling parties to a large extent, relied upon the

14   language in the *Lipnicki* case, which is the Southern District

15   of Texas.  And citing that case, the *Richardson* court said,

16   quote, we agree with the *Lipnicki* reasoning that, quote, those

17   courts -- and they're talking about the courts that refused to

18   do that.

19        **THE COURT:**  Uh-huh.

20        **MR. BONSALL:**  Refused to allow FLSA rights to be

21   compromised in such a way.  "Those courts may well have taken

22   the wise approach in exercising their discretion to determine

23   the proper scope of settlements in those particular cases."

24        **THE COURT:**  I understand.  But what Judge Costa said

25   in the *Lipnicki* opinion is it may well have been wise.  He

1    wasn't saying it was wise or it was the right thing to do.  He

2    was saying it may well have been wise for them to do that.

3        But that's not the question here.  The question here is

4    res judicata.

5            **MR. BONSALL:**  That's correct.

6            **THE COURT:**  And my question I keep asking is, why was

7    it wise for judges to say it's not appropriate to weigh an FLSA

8    claim when you're settling a state law wage and hour class

9    action --

10           **MR. BONSALL:**  Well, for two reasons.  One I've already

11   articulated.  I won't repeat it again.

12       We think the statute articulates that it would be improper

13   to do so.  And the vast majority of the courts --

14           **THE COURT:**  Why does the statute -- what language of

15   the statute clearly indicates that it would be improper to do

16   so?

17           **MR. BONSALL:**  It does --

18           **THE COURT:**  The statute speaks to a situation -- the

19   circumstances in which people can become plaintiffs in an FLSA

20   action.  How can you say that the statute speaks clearly to

21   this situation?

22           **MR. BONSALL:**  We think by implication the language of

23   the statute has been construed by the courts like *Lipnicki* and

24   *Richardson* to --

25           **THE COURT:**  No.  The *Lipnicki* court did not construe

```
 1   the statute as applying to this situation.
 2           MR. BONSALL:  No, I think --
 3           THE COURT:  Show me --
 4           MR. BONSALL:  -- they suggested that a court --
 5           THE COURT:  May well have been wise.  I don't know,
 6   but may well have been wise.
 7           MR. BONSALL:  Yes.
 8           THE COURT:  That's not the issue before me.  The issue
 9   before me is res judicata.
10           MR. BONSALL:  Well, I think that if this court, in
11   light of the arguments that have been presented, takes the
12   position that FLSA rights can be compromised, clearly
13   compromised in this case, even though hundreds and thousands of
14   individuals have not opted in, then I suspect that would be
15   grounds very ripe for challenge, and everyone would want to
16   assert that the --
17           THE COURT:  That's great.  But you still -- I mean,
18   we've been talking about this for, like, 20 minutes now, and
19   you still haven't explained why, why it's not -- why it's
20   appropriate to weigh -- to release other types of claims that
21   haven't been asserted in a class action but not appropriate to
22   release these claims in a class action.
23           MR. BONSALL:  I think --
24           THE COURT:  Why?
25           MR. BONSALL:  Well --
```

```
 1              THE COURT:  Last chance.

 2              MR. BONSALL:  Okay.  If you're talking about comparing

 3    FLSA to other claims that are being waived, I think, once

 4    again, the answer is that in those other statutory rights they

 5    don't lay out a specific mechanism for enforcement of those

 6    rights.  They don't provide for an opt-in --

 7              THE COURT:  Mechanism for becoming plaintiffs.

 8              MR. BONSALL:  Right.

 9              THE COURT:  Okay.

10              MR. BONSALL:  And that's not exactly on all fours with

11    the situation we have here because of what is alleged and what

12    is not alleged in the complaint.

13         However, in the other causes of action, the other claims

14    that are being waived by the release in this case, I cannot

15    find any one of them that has a very specific statutory regimen

16    that requires an opt in.  None of them have such an

17    arrangement.

18         And we could ignore that and pretend that it doesn't exist

19    because the FLSA claims were not alleged in this case.  But I

20    think that is not as sound as what the case law suggests should

21    be done.

22              THE COURT:  Why does -- why does the existence of a

23    mechanism for becoming a plaintiff in a case matter for

24    purposes of deciding whether it's appropriate for somebody to

25    waive their -- for somebody to waive their -- for a class to
```

1  waive its FLSA claims?  Why does the existence of a mechanism

2  for becoming a plaintiff matter?

3          **MR. BONSALL:**  I think, in its wisdom, Congress has

4  decided that when we are going to compromise federal overtime

5  rights, it is not sufficient to merely notify a potential

6  putative member --

7          **THE COURT:**  But what about -- where did Congress

8  suggest that it was legislating about circumstances in which

9  somebody compromises, as you put it, their FLSA rights?

10     I mean, when did Congress legislate about the

11  circumstances in which people compromised their FLSA rights?

12  When did that happen?

13          **MR. BONSALL:**  I don't believe that you will find in

14  the statute language regarding compromises of unasserted

15  rights.  I don't think that's in the statute.

16     I think that the courts and our clients believe that --

17  construing the statute most appropriately, that it would be

18  improper.  And I believe that most of the authority that has

19  been cited and that Your Honor has reviewed would strongly

20  suggest that making a clear distinction between what is

21  asserted and what is not asserted enables the Court to permit a

22  release to compromise unasserted FLSA claims.

23          **THE COURT:**  Well, what about the fact -- I'll just ask

24  you one more question about this.  This provision, this opt-in

25  provision in the FSLA --

1      **MR. BONSALL:**  Yes.

2      **THE COURT:**  -- was not part of the original statute;

3  right?

4      **MR. BONSALL:**  That's correct.

5      **THE COURT:**  The original statute was provided for

6  class actions, sort of, in the same way that Rule 23 class

7  actions are asserted; right?

8      **MR. BONSALL:**  I think that's correct, Your Honor.

9      **THE COURT:**  And Congress amended the statute to change

10  it from "opt out" to "opt in"; right?

11      **MR. BONSALL:**  I'm not certain that they did.

12      I know that when they amended it, it became -- it was an

13  opt in.  I don't know what existed before then, Your Honor.

14      **THE COURT:**  Okay.  And any -- any indication why

15  Congress amended the statute to provide that you could only

16  become an FLSA plaintiff if you affirmatively opt in?

17      **MR. BONSALL:**  One more time.  I didn't understand the

18  question.

19      **THE COURT:**  Is there any indication why Congress made

20  that change?

21      **MR. BONSALL:**  I am not familiar with the legislative

22  history that would indicate specifically why those amendments

23  were made specifically.

24      All I know is that it is unequivocally an opt-in

25  arrangement.  And the courts have said that there are

1   fundamental differences between an opt in and an opt out.

2       **THE COURT:**  That begs the question whether you can --

3   I mean, it seems like there's a disconnect.  It's an opt-in

4   procedure; therefore, you can't waive your FLSA claims.  The

5   problem is the statute was enacted to restrict people's ability

6   to participate as plaintiffs in FLSA claims.  Restrict people's

7   ability.

8       So I don't know how you get from statutory language that

9   was enacted to restrict people's ability to participate in --

10  as FLSA plaintiffs to a conclusion that that same language

11  prevents people or protects people from -- from releasing their

12  FLSA -- potential FLSA claims when state law claims are being

13  settled.  The distance between one and the other seems vast.

14      **MR. BONSALL:**  The only thing that I can say, Your

15  Honor, is that I don't believe that any of the other state

16  claims are obliged to require waiver through an opt-in

17  procedure.  None of them.

18      Congress has --

19      **THE COURT:**  Okay.  And the question is:  Why does that

20  matter?  And I think we've discussed it --

21      **MR. BONSALL:**  Yes.

22      **THE COURT:**  -- and tried to explain it.  I understand

23  what you're trying to say.

24      Speaking of which, the other -- another, kind of,

25  substantive point that I was interested in hearing about from